Sue HALLSTROM and Robert C. Hallstrom, Plaintiffs,

v.

CITY OF GARDEN CITY, ID., et al., Defendants.

Civ. No. 87-1360.

United States District Court, D. Idaho.

May 3, 1991.

Robert C. and Sue Hallstrom, pro se.

John L. King, Cantrill Skinner Sullivan & King, Boise, ID, for defendants City of

Garden City, Randy W. Snapp, Sgt. Thurston.

James J. Davis, Eberle Berlin Kading Turnbow & McKlveen, Boise, ID, for defendants Sheriff Vaughn Killeen, Captain Mike Roberts, Ada County.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

RYAN, District Judge.

### I. FACTS AND PROCEDURE

This suit was brought pursuant to 42 U.S.C. § 1983 by Mr. Robert C. Hallstrom and Mrs. Sue Hallstrom. In addition to challenging the constitutionality of Idaho Code § 18–705,[1] which prohibits resisting, delaying and/or obstructing police officers, Mr. and Mrs. Hallstrom allege a number of civil rights violations stemming from the conduct of the named defendants which occurred during an arrest of Mr. Hallstrom on March 24, 1982, and an arrest of Mrs. Hallstrom on June 19, 1987. The facts surrounding both arrests are briefly stated as follows.

According to the Complaint, on March 24, 1982, Mr. Hallstrom was attending arraignments at Ada County Traffic Court. He was allegedly approached by a police officer for no apparent reason and was asked to identify himself. When he refused to do so, he was searched and ultimately arrested for violating Idaho Code § 18–705. Mr. Hallstrom was released on the same day as his arrest. On January 23, 1983, the charge against Robert Hallstrom was dismissed.

More than four years later, on a Friday morning, June 19, 1987, Mrs. Hallstrom was stopped while driving through Garden City, in Ada County, Idaho, by a Garden City Police Officer named Randy Snapp. The reason for the stop was that the car

Hallstrom was driving had a burned-out taillight. Mrs. Hallstrom happened to have a spare taillight in her trunk, which she and the officer installed. In the course of the stop, Mrs. Hallstrom was asked to produce a driver's license and proof of liability insurance, which Idaho law requires drivers to carry. She did not produce a license, but instead stated that she believed she was not required to have a license by Idaho law and that requiring her to have a license violated her liberty to travel guaranteed by the United States Constitution. Mrs. Hallstrom was arrested, taken into custody, and driven to the Ada County Jail, where she was issued citations for the motor vehicle violations and charged with violating Idaho Code § 18–705.

While in custody, Mrs. Hallstrom refused to participate in the booking procedures, again stating that she was acting on the basis of her constitutional rights. Because she refused to submit to the booking procedures, Mrs. Hallstrom was also charged by Ada County with violating Idaho Code § 18–705. Throughout the time Mrs. Hallstrom refused to submit to booking procedures and was being held in custody, she demanded to be taken before a magistrate. Mrs. Hallstrom alleges that during this time she was unable to make any telephone calls. On the afternoon of Monday, June 22, 1987, Mrs. Hallstrom was taken before a magistrate, and on June 24, 1987, she was released from custody. All charges against Mrs. Hallstrom were eventually dropped.

Based upon their experiences, Mr. and Mrs. Hallstrom brought this action naming Garden City Police Officer Randy W. Snapp, Sergeant Thurston and the City of Garden City (hereinafter the Garden City Defendants); as well as the Sheriff of Ada County, Vaughn Killeen, Ada County Police Captain Mike Roberts, and Ada County

---

**1.** Idaho Code § 18–705 (1987) provides as follows:

Resisting and obstructing officers.—Every person who wilfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

(hereinafter the Ada County Defendants).[2] The gist of the Complaint is that the Ada County Defendants' arrest of Mr. Hallstrom in 1982 was improper; that the Garden City Defendants' arrest of Mrs. Hallstrom in 1987 was also improper; that the statute prohibiting resisting, delaying, and/or obstructing is unconstitutional; and that the Ada County Defendants' jailing of Mrs. Hallstrom, based on her refusal to submit to booking procedures, was improper.

Mr. and Mrs. Hallstrom jointly pray for four different forms of declaratory relief: (1) for a declaratory judgment that Idaho Code § 18–705 is unconstitutional on its face as applied to the plaintiffs' conduct in this case; (2) for an injunction directing the Garden City Chief of Police to assure this court that any order entered is read and understood by every present and future law enforcement officer; (3) for an injunction concerning the time frame in which prisoners at the Ada County Jail are allowed phone calls; and (4) for permanent mandatory injunctions directing Garden City to expunge all records of Mrs. Hallstrom's arrest from the records of the Garden City Police Department, Ada County Jail, and any other state or federal agencies. Also, Mrs. Hallstrom, individually, prays for monetary relief, including the costs of the action as authorized by 42 U.S.C. § 1988; $60,000 from each defendant for the six days of her incarceration; $10,000 for each separate civil rights violation; and for punitive damages in the amount of $100,000 from each defendant.

On September 5, 1990, after some difficulties in scheduling, the court entertained oral argument on the Ada County Defendants' Motion for Summary Judgment and the Garden City Defendants' Motion for Summary Judgment. The day before such motions came on for hearing, plaintiffs filed a cross-motion for summary judgment against the Ada County Defendants only. Finding that further oral argument would not aid the decision-making process, and

finding that the plaintiffs' motion has been fully briefed, it too is ripe for consideration at this time.

Thus, having *thoroughly* considered *all* the arguments presented herein, based on the analysis to follow, this court finds that defendants' motions for summary judgment should be granted; plaintiffs' cross-motion should be denied; and this action should be dismissed.

## II. ANALYSIS OF PENDING MOTIONS

Because of the distinctly different time frames involved, in analyzing the issues herein, Robert Hallstrom's claims shall be treated separately from those of Sue Hallstrom. Then, once the claims of each plaintiff are analyzed in relation to the named defendants, the court will turn to plaintiffs' challenge regarding the constitutionality of Idaho Code § 18–705.

### A. *Robert Hallstrom's Claims*

In their motions for summary judgment, both the Garden City Defendants and the Ada County Defendants contend that Robert Hallstrom's claims are barred by the applicable Idaho statute of limitations.[3] This court agrees.

In *Wilson v. Garcia*, 471 U.S. 261, 275, 105 S.Ct. 1938, 1946, 85 L.Ed.2d 254 (1985), the Supreme Court held that "the borrowing principle contained in § 1988 ... is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." Later, the Supreme Court discussed its holding in *Wilson* and stated that "based upon the legislative history of § 1983 and the wide array of claims now embraced by that provision, that § 1983 'confer[s] a general remedy for injuries to personal rights.'" *Owens v. Okure*, 488 U.S. 235, 240, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989). And, the Court expressly acknowl-

---

**2.** The City of Boise and State of Idaho were also named defendants; however, they were previously dismissed by this court. *See* Memorandum Opinion & Order, dated May 13, 1988, at 8.

**3.** Additionally, the Garden City Defendants maintain that Robert Hallstrom has no standing to remain in this lawsuit as a plaintiff because there is no case or controversy between him and these defendants.

edged having previously held that, "[b]ecause '§ 1983 claims are best characterized as personal injury actions' ... a State's personal injury statute of limitations should be applied to *all* § 1983 claims." *Id.* at 240–41, 109 S.Ct. at 577 (emphasis added).

██ Consistent with the holding in *Wilson,* actions brought pursuant to 42 U.S.C. § 1983 in Idaho must meet the two-year statute of limitations for personal injury actions which is set forth in Idaho Code § 5–219(4). *Henderson v. State,* 110 Idaho 308, 715 P.2d 978, *cert. denied,* 477 U.S. 907, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986). Federal law dictates that the time of accrual of a civil rights claim is when plaintiff knows or has reason to know of the injury which is the basis for the action. Giving that standard a broad interpretation, based on the record, the latest date on which Robert Hallstrom could be considered to have known (or to have reason to have known) of his alleged civil rights violations was January 23, 1983, the date on which the charge against him was dropped.

Robert Hallstrom did not commence this action within two years of January 23, 1983, but instead waited almost four years, until December 22, 1987. Therefore, to the extent this action states claims by Mr. Hallstrom against the Garden City Defendants and the Ada County Defendants, such claims are barred by Idaho Code § 5–219(4).[4]

## B. *Sue Hallstrom's Claims*

Mrs. Hallstrom filed her claims against both defendants within two years of the events at issue. There is no statute of limitations problem with Mrs. Hallstrom's claims. Thus, the court turns to the merits.

In order to establish liability under 42 U.S.C. § 1983, a plaintiff must prove two essential elements: (1) that the conduct complained of was committed by a person under color of state law, and (2) that the conduct resulted in a deprivation of rights,

privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). In this case, the actions of the defendants were clearly taken under color of state law. However, in their motions for summary judgment, the defendants contend that Mrs. Hallstrom has failed to state a case under 42 U.S.C. § 1983. Thus, the critical question for this court to determine is whether or not Mrs. Hallstrom was deprived of any of her constitutional rights as a *result of the conduct of the Garden City Defendants and/or the Ada County Defendants.*

Mrs. Hallstrom's claims against each defendant shall be addressed in turn.

1. Claims Against the Garden City Defendants.

██ As previously noted, Mrs. Hallstrom was arrested in Garden City after being stopped by a police officer for driving with a burned-out taillight. Mrs. Hallstrom was asked to produce her license and proof of insurance, and she did not do so. Mrs. Hallstrom contends that her arrest violates her right to free speech, and that she was arrested not for violating any law, but for saying she had a constitutional right to drive without a license.

With respect to her action against the Garden City Defendants, Mrs. Hallstrom challenges her arrest under Idaho Code § 18–705,[5] which prohibits willfully resisting, delaying and/or obstructing police officers, and essentially attempts to tie rights of free speech arising under the First Amendment (as well as rights under the Fourth and Fourteenth Amendments) with her alleged right to drive without a license and/or to refrain from identifying herself upon being stopped for a traffic infraction. She contends that because she has a constitutional right to drive without a license, she cannot be arrested for resisting, delaying and/or obstructing an officer when she has done so. This court does not agree.

---

**4.** Consequently, the remainder of this decision addresses only the claims raised by Plaintiff Sue Hallstrom.

**5.** *See supra* note 1.

The court first examines Mrs. Hallstrom's contention that she was improperly arrested. Idaho Code § 49–316 (formerly § 49–319) (1988 and Supp.1990) provides the following:

Driver's License to be carried and exhibited on demand.—Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle and shall, upon demand, surrender the driver's license into the hands of a peace officer for his inspection. However, no person charged with a violation of the provisions of this section shall be convicted if a driver's license issued to the person and valid at the time of his arrest is produced in court.

And, Idaho Code § 49–301 (1988 and Supp. 1990), provides, in pertinent part, that: *"No person, except those expressly exempted by the provisions of this chapter, shall drive any motor vehicle upon a highway unless the person has a valid driver's license"* (emphasis added). Thus, the law in Idaho provides that those who use the highways must have valid licenses. In her Complaint, Mrs. Hallstrom contests this fact by stating:

Defendants maliciously charged Plaintiff Sue with the crime of failure to show an operator's license when Idaho [C]ode specifically states that only licensed operators are required to show licenses. Defendants made this malicious charge knowing that Plaintiff was not a licensee. Police officers cannot require that which is impossible as the law does not require the impossible.

Complaint, filed Dec. 22, 1987, at 12 ¶ 42. However, such reasoning misstates the law since it focuses only on the first sentence of Idaho Code § 49–316 and completely ignores the existence of Idaho Code § 49–301.

There is nothing in the record to suggest that Mrs. Hallstrom was "expressly exempted" from carrying a driver's license, nor that she indicated such to Officer Snapp at the time of the traffic stop. Rather, Mrs. Hallstrom contends that:

Defendant Snapp arrested Plaintiff Sue merely because she was an annoyance to Defendant and charged Plaintiff with a crime of not providing identification upon demand (i.e., obstructing and delaying), when identification other than an operator's license was never demanded, and without giving Plaintiff any opportunity to provide other identification, rendering compliance with Defendant's charge a physical impossibility thereby denying Plaintiff her liberty without due process of law, and making a false charge (i.e., not producing identification, even if the demand has been made, does not constitute obstructing and delaying).

Complaint, filed Dec. 22, 1987, at 12 ¶ 43.

At the time Officer Snapp stopped Mrs. Hallstrom on June 19, 1987, she had no valid driver's license or proof of insurance with her, and demonstrated no ability to produce such (i.e., that they had been forgotten at home, or in another vehicle, etc.); accordingly, Mrs. Hallstrom was committing misdemeanors in Officer Snapp's presence in violation of Idaho Code § 49–236. In support of the Garden City Defendants' motion for summary judgment, Officer Snapp states:

[That he] asked Sue Hallstrom for her driver's license, registration and proof of insurance. Sue Hallstrom responded, "I am not required to have a driver's license." [He] explained that Idaho law required any person operating a motor vehicle on the highways of the State of Idaho to have a valid operator's license in their possession. Sue Hallstrom responded, "That is not according to the Constitution."

[He] again requested to see her driver's license and Sue Hallstrom refused to give [him] a driver's license. Sue Hallstrom also refused to identify herself. She then started to get back in her vehicle. [Officer Snapp] then explained to Sue Hallstrom that if she would not identify herself or produce a driver's license, she would be placed under arrest for resisting and delaying an officer. Sue Hallstrom then advised [Officer Snapp] that not having a driver's license was not an arrestable offense.

Since she would not identify herself, [Officer Snapp] placed Sue Hallstrom under arrest....

Affidavit of Randy Snapp, filed May 26, 1988, at 2–3.

Contrary to the position taken by Mrs. Hallstrom, "[a] police officer is permitted to arrest without a warrant if a misdemeanor or a felony is committed in the officer's presence." *Higbee v. City of San Diego*, 911 F.2d 377, 379 (9th Cir.1990) (*citing United States v. Watson*, 423 U.S. 411, 418, 421–24, 96 S.Ct. 820, 825, 827–28, 46 L.Ed.2d 598 (1976)). And, as recently recognized by the Ninth Circuit Court of Appeals, "[t]his practice has never been successfully challenged and stands as the law of the land." *Higbee v. City of San Diego*, 911 F.2d at 379 (footnote omitted). The Idaho Court of Appeals has recognized that "upon request by a police officer, a driver must manually surrender his driver's license, I.C. § 49–319 (redesignated as § 49–316), and provide proof of liability insurance, I.C. § 49–245 (redesignated as § 49–1232)." *State v. Simmons*, 115 Idaho 877, 879 n. 1, 771 P.2d 541, 543 n. 1 (Ct.App. 1989). Moreover, in discussing the purpose of drivers licenses and the constitutionality of the statute requiring proof of liability insurance, the Idaho Court of Appeals acknowledged that:

> Individuals must sacrifice part of their "liberty" in order to empower a government to regulate, through passage and enforcement of laws necessary for the general public welfare. John Locke, the English Philosopher who wrote of government and freedom, said: "Where there is no law, there is no freedom."

*State v. Gibson*, 108 Idaho 202, 203, 697 P.2d 1216, 1217 (Ct.App.1985) (citation omitted).

In opposition to defendants' motion, Mrs. Hallstrom boldly asserts that she would have identified herself if given the chance, "but [she] was never asked for or afforded the opportunity to provide any other form of identification." Response to Motion for Summary Judgement [sic], filed March 16, 1989, at 6. Despite such contentions, Mrs. Hallstrom's conduct suggests otherwise.

In fact, Mrs. Hallstrom fails to indicate anywhere within her voluminous briefing that during the course of the stop she offered Officer Snapp an alternate form of identification. On the contrary, her briefs suggest only that, as a strong constitutionalist, Mrs. Hallstrom believes she had a right not to carry a driver's license and also a right to remain silent on the issue. As her brief indicates: "The right to free speech inherently includes the right not to speak." Memorandum in Support of Answer to Motion for Summary Judgement [sic] (Obstruction), filed April 4, 1989, at 12.

*Nothing* in the record suggests that Mrs. Hallstrom made any effort to cooperate with Officer Snapp or to comply with the law. On the contrary, "[b]ecause she would not offer any degree of cooperation, [Officer Snapp] had no way to complete a citation or no belief that she would appear [in court]." Affidavit of Randy Snapp, filed May 26, 1988, at 5. Accordingly, Officer Snapp believed his "only recourse was to place her in custody for obstructing and delaying." *Id.* at 6. It is apparent that Officer Snapp had a reasonable basis to believe that Mrs. Hallstrom would not appear if she were merely issued a citation, and therefore, Mrs. Hallstrom's arrest was appropriate. *Cf. Tanner v. Heise*, 879 F.2d 572, 579 (9th Cir.1989) (complaint alleged police officers believed defendant, who drove without a drivers license, *would appear in court*). Moreover, given that Mrs. Hallstrom later admitted not knowing whether or not the car she was driving was insured, the officer may have been subjected to civil liability for negligent entrustment if the officer had permitted Mrs. Hallstrom to drive from the scene of the stop in Garden City knowing that she failed to carry a license or proof of insurance. *See, e.g., Ransom v. Garden City*, 113 Idaho 202, 743 P.2d 70 (1987).

■ Mrs. Hallstrom's claims against the Garden City Defendants incorporate a challenge under the fourth amendment as it pertains to the search of her personal "papers and effects ... and the vehicle [she] was using." Complaint, filed Dec. 22, 1987, at 11. The Fourth Amendment re-

quires that police officers have probable cause prior to making an arrest. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964). In *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the Supreme Court noted that probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe "that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37, 99 S.Ct. at 2632. Searches incident to a lawful arrest constitute a traditional exception to the warrant requirement of the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973).

■ When considering whether probable cause existed for a warrantless search, the Supreme Court established an objective standard based upon the beliefs of a reasonable officer given clearly established law and the information which he possessed. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Although the existence of probable cause is generally a factual question, summary judgment is appropriate, where, as here, no reasonable jury could find that probable cause for the arrest did not exist. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984). Since Officer Snapp made a lawful custodial arrest of Mrs. Hallstrom as the occupant of the automobile, he could, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile and examine the contents of any closed containers within the passenger compartment. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Moreover, the validity of a full custody arrest *and search incident to that arrest* for minor traffic offenses has been upheld on more than one occasion. *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973); *United States v. Franklin*, 728 F.2d 994, 997 (8th Cir. 1984).

In light of the foregoing, the court finds that Officer Snapp could have reasonably concluded that Mrs. Hallstrom was "wilfully resisting, delaying and/or obstructing" his attempts to discharge his duty in getting her to relinquish her driver's license, proof of insurance and/or her identity. Therefore, Mrs. Hallstrom's arrest, and the search incident thereto, were not improper. Indeed, to have allowed Mrs. Hallstrom to drive from the scene would have been an abandonment of Officer Snapp's duties.

The Garden City Defendants maintain further that all of Officer Snapp's conduct was validly within his duties, and that Mrs. Hallstrom would have been arrested for failing to have a driver's license and failing to identify herself, whether or not she was charged with violating Section 18–705. Moreover, the Garden City Defendants point out that their involvement ended when Mrs. Hallstrom was left at the Ada County Jail, and that if Mrs. Hallstrom had simply cooperated with the booking process at the Ada County Jail, she would have been immediately released. Memorandum in Support of Motion for Summary Judgment, filed Feb. 27, 1989, at 13. Therefore, "[h]er damages, if any, were caused by her own choice not to cooperate with standard jail procedure." *Id.*

Based on the entire record, and the undisputed facts herein, this court is unable to conclude that Mrs. Hallstrom has met her burden as a nonmoving party under Rule 56 of the Federal Rules of Civil Procedure. Indeed, in response to the Garden City Defendants' motion for summary judgment, Mrs. Hallstrom and her husband essentially concede that they are "victims of their own behavior." Response to Motion for Summary Judgement [sic], filed March 16, 1989, at 19. This court finds that Mrs. Hallstrom is not entitled to recover from the Garden City Defendants pursuant to 42 U.S.C. § 1983 because her arrest was proper and any deprivation which she suffered was not the result of her speech but the *result of her conduct in failing to comply with the Idaho law.* Therefore, the Garden City Defendants are entitled to summary judgment under 42 U.S.C. § 1983.

### 2. Sue Hallstrom's Claims Against the Ada County Defendants

As the facts stated above reveal, after her arrest in Garden City, Mrs. Hallstrom was taken to the Ada County Jail to be booked. She refused to submit to the booking procedure, demanding instead to be taken before a magistrate. In Idaho, a defendant is normally booked prior to arraignment before a magistrate. When Mrs. Hallstrom refused to cooperate with the booking process, she was charged by the Ada County Defendants with resisting, delaying and obstructing in violation of Idaho Code § 18–705 and was taken into custody.

With respect to her claims against the Ada County Defendants, Mrs. Hallstrom contends that she was again arrested for exercising her right to free speech. She further contends that Ada County violated her right to remain silent, her right to counsel[6], her right to be taken before a magistrate, and her right to be protected from cruel and unusual punishment.[7]

Before reaching the threshold issues raised by plaintiff's complaint, the court will address three tangential issues which were raised by the Ada County Defendants and largely unrefuted by Mrs. Hallstrom.

■ First of all, the Ada County Defendants maintain that Mrs. Hallstrom's state law claims are barred because she failed to file a tort claims notice as required by the Idaho Tort Claims Act for claims against governmental entities.

The Ninth Circuit has held that where there are pendent state law claims against governmental entities, plaintiffs must comply with the procedural requirements set forth by the relevant state statutes regarding tort claims against such entities. *Ortega v. O'Connor*, 764 F.2d 703, 707 (9th Cir.1985). Mrs. Hallstrom did not file a tort claim as specified by the Idaho Tort Claims Act. Affidavit of Thelma E. Nich-

ols in Support of Motion for Summary Judgment, filed March 14, 1989, at 2. Accordingly, this court agrees that the Ada County Defendants are summarily entitled to judgment with respect to all state law claims.

■ Secondly, to the extent that Captain Mike Roberts is sued in his individual capacity, the Ada County Defendants maintain that he is entitled to summary judgment based on the decision of *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In *Graham*, the Supreme Court addressed the distinctions between actions brought against people in their official versus personal and/or individual capacities. "Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165, 105 S.Ct. at 3105. "To establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166, 105 S.Ct. at 3105. When it comes to raising defenses to liability, depending on the person's position, he may be able to assert "personal immunity defenses, such as objectively reasonable reliance on the existing law." *Id.* at 166–67, 105 S.Ct. at 3105 (citations omitted). Based on the allegations in the complaint and in light of previous decisions entered in this district (i.e., regarding detentions pending compliance with booking procedures)[8], Mrs. Hallstrom has failed to demonstrate that Captain Roberts had *no reasonable basis* for relying on existing law by detaining her until she submitted to the booking process. Consequently, this court agrees that Captain Roberts, as an individual, should be exempt from this suit and summary judgment on this issue is warranted.

■ Thirdly, the Ada County Defendants argue that the punitive damages allegations against Ada County should be dis-

---

**6.** *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (right to counsel attaches once judicial proceedings initiated).

**7.** Notably, the Supreme Court has held that the Eighth Amendment protects only those who

have been convicted of a crime. *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977).

**8.** *See infra* at 1453.

**1452**

missed. Pursuant to the reasoning in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), a municipality may not be sued for punitive damages under 42 U.S.C. § 1983. Accordingly, the punitive damages allegations asserted against Ada County shall be dismissed.

■ The court will now turn to the crux of Mrs. Hallstrom's charges under 42 U.S.C. § 1983 against the Ada County Defendants. Subsequent to Mrs. Hallstrom's arrest by the Garden City Defendants, the Ada County Defendants were responsible for taking certain administrative steps, including subjecting Mrs. Hallstrom to the standard booking procedures. Ada County was effectively serving in a custodial capacity.

Mrs. Hallstrom contends that Ada County unjustifiably refused to bring her before a magistrate before booking her. The Constitution requires a state to provide " 'a fair and reliable determination of probable cause' by a judicial officer prior to the imposition of *'any significant pretrial restraint of liberty'* other than 'a brief period of detention to take the administrative steps incident to [a warrantless] arrest.' " *Ingraham v. Wright*, 430 U.S. 651, 698–99, 97 S.Ct. 1401, 1426, 51 L.Ed.2d 711 (1977) (citation omitted). The Supreme Court has gone on to recognize that "[t]his *'practical compromise'* is made necessary because 'requiring a magistrate's review of the factual justification prior to any arrest ... would constitute an intolerable handicap for legitimate law enforcement.' " *Id.* at 699, 97 S.Ct. at 1426 (emphasis added) (citation omitted).

In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that the Fourth Amendment requires a judicial determination of probable cause as a "condition for any significant pretrial restraint of liberty." *Id.* at 125, 95 S.Ct. at 868–69. As the Court explained, "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Id.* at 113, 95 S.Ct. at 862. The Ninth Circuit Court of Appeals has construed *Gerstein* to afford police departments flexibility in processing different suspects and has noted that "administrative steps incident to a particular arrest will necessarily vary with geographical factors and with local police and court system practices as well as with innumerable factual exigencies." *Kanekoa v. City & County of Honolulu*, 879 F.2d 607, 611 (9th Cir.1989) (citation omitted). Certainly, Mrs. Hallstrom's refusal to submit to the booking procedures classifies as a "factual exigency."

Ada County attempted to take the administrative steps necessary to book Mrs. Hallstrom so that she could be taken before a magistrate. The length of Mrs. Hallstrom's detention was dictated by her own refusal to take part in the county's standard administrative steps. *Cf. Bernard v. City of Palo Alto*, 699 F.2d 1023, 1025 (9th Cir.1983) (detention for less than 24 hours without probable cause hearing would violate the Constitution in a particular case if circumstances were such that administrative steps leading to a magistrate's determination *reasonably* could have been completed in less than 24 hours) [9]. The record is clear that all Ada County wanted was to have its administrative procedures complied with. If these defendants had delayed taking Mrs. Hallstrom before a magistrate because they wanted to interrogate her, such certainly would not pass constitutional muster under

**9.** While this court notes that the underlying facts in this case may cause one to pause, refusals to comply with the booking processes cannot be condoned. Defendants are certainly entitled to a prompt appearance before a magistrate. However, where as here, Sue Hallstrom attempted to thwart the administrative steps incident to her arrest, she cannot later declare that constitutional deprivations occurred. Indeed, if defendants were encouraged to dictate which administrative procedures they would participate in and which they would not, the booking process would be chaotic. And, if allowed, the delay fostered by such behavior would be certain to have an unfair impact on other defendants entitled to prompt completion of the administrative steps incident to their arrests.

*Gerstein. United States v. Wilson*, 838 F.2d 1081, 1085 (9th Cir.1988). However, in this case, there is no allegation that defendants wanted to do anything more than complete the booking process. *See, e.g., Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir.1989) (seeking biographical information for booking purposes does not constitute interrogation or its functional equivalent in violation of the Fifth Amendment).

■ It is well settled in this district and elsewhere that defendants may constitutionally be required to submit to the booking process before being taken before a judicial officer. The Ada County Defendants contend that they had the right to submit Mrs. Hallstrom to the booking process. Defendants cite to several decisions from this district which hold that the booking process is constitutional. This court has previously held that "incommunicado incarceration" of a person who refuses to comply with booking procedures constitutes neither a violation of substantive or procedural due process under the fourteenth amendment. Ada County Defendants' Motion for Summary Judgment, filed March 14, 1989, Exhibit A [*Shaw v. Boise City*, Civil No. 84–1088 (D.Idaho, Order filed Sept. 12, 1985) at 2, 1985 WL 11183]. Moreover, it has been recognized in this district that:

> Booking procedures are necessary to the effective management and administration of a detention facility. Incarcerating a person until such time as they comply with booking procedures is a reasonable measure to ensure a legitimate government objective is achieved. It is not unreasonable nor unconstitutional for jailers to require that pretrial detainees comply with booking procedures. Similarly, it is not unreasonable for the jailers to incarcerate a person who might otherwise be able to post bail subsequent to booking, as a means of coercing that person into compliance with the booking procedures.

*Id.*, Exhibit A at 2–3. *See also Gibson v. Crowell*, Civil No. 84–1475 (D.Idaho, Order filed Sept. 13, 1985 (J. McNichols)). Moreover, because it cannot be said that the actions of the Ada County Defendants were "apparently" unlawful, the defense of qualified immunity applies. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). *See, e.g., Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Mrs. Hallstrom challenges the fact that she was detained for three days before being brought before a magistrate. Despite such contentions, however, the record is clear that Mrs. Hallstrom controlled her own destiny and was responsible for the very delay [10] about which she complains. She simply refused to comply with the booking procedures.

Based on the foregoing, this court finds that once in the custody of the Ada County Defendants, any deprivation suffered by Mrs. Hallstrom *occurred as the result of Mrs. Hallstrom's failure to comply with*

---

**10.** This court is fully aware of Idaho statutes requiring that those detained by a police officer must be taken before a magistrate. Idaho Code § 49–1406 (1988) (formerly Section 49–1110) provides:

> 49–1406. When person must be taken immediately before a magistrate.—Whenever any person is halted by a peace officer for any violation of the provisions of this title not amounting to a misdemeanor and demands an immediate appearance before a magistrate, he shall be taken *without unnecessary delay* before the proper magistrate as specified in section 49–1411, Idaho Code. (emphasis added)

And, Idaho Code § 49–1407 (1988) (formerly Section 49–1111) provides, in part:

> 49–1407. When peace officer has option to take person before a magistrate.—Whenever any person is halted by a peace officer for any misdemeanor violation of the provisions of this title and is not required to be taken before a magistrate, the person shall, in the discretion of the officer, either be given a traffic citation or be taken *without unnecessary delay before the proper magistrate* as specified in section 49–1411, Idaho Code, in the following case:
> (1) When the person does not furnish satisfactory evidence of identity or when the officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court. (emphasis added)

*the booking procedures.* Mrs. Hallstrom was told repeatedly that if she complied with the booking procedures, she could be taken before a magistrate and/or released on bail. It was Mrs. Hallstrom's refusal to submit to the booking process, not her utterances, which resulted in the citation being issued under Idaho Code § 18–705. Thus, this is one case where it definitely can be said that the prisoner held the keys to her jail cell. The Ada County Defendants are entitled to summary judgment under 42 U.S.C. § 1983.

### C. Constitutionality of Idaho Code § 18–705

As set forth previously herein, Idaho Code § 18–705 provides as follows:

Resisting and obstructing officers.—Every person who wilfully resists, delays or obstructs any public officer in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1000), and imprisonment in the county jail not exceeding one (1) year.

In this action, among other things, Mrs. Hallstrom challenges the constitutionality of Idaho Code § 18–705 on "its face" and "as applied" to her by the Garden City Defendants and the Ada County Defendants.[11] Each constitutional theory will be addressed in turn.

### 1. Facial challenge to Section 18–705.

■■■ This action is based, in large part, upon the case of *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), which was decided just four days before Mrs. Hallstrom drove through Garden City with a burned out taillight.

In *Hill,* a Houston, Texas, municipal code section was declared unconstitutionally vague and overbroad because it allowed the police discretion to make arrests selectively on the basis of the content of speech. The ordinance at issue in *Hill* provided the following:

Sec. 34–11. Assaulting or interfering with policemen.

(a) It shall be unlawful for any person to assault, strike or *in any manner* oppose, molest, abuse or *interrupt* any policeman in the execution of his duty, or any person summoned to aid in making an arrest.

*Id.* at 455, 107 S.Ct. at 2506 (*citing* Code of Ordinances, City of Houston, Texas, § 34–11(a) (1984)) (emphasis added). The Houston police arrested an average of a thousand people per year using that ordinance. *Id.* at 470, n. 19, 107 S.Ct. at 2514, n. 19.

In *Hill,* the Supreme Court acknowledged that "[i]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a *substantial* amount of constitutionally protected conduct." *Id.* at 458, 107 S.Ct. at 2508 (*citing Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982), and *Kolender v. Lawson,* 461 U.S. 352, 359 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983)) (emphasis added). Indeed, as it reversed a district court decision, the Fifth Circuit Court of Appeals concluded that the ordinance was "substantially overbroad" and found that "[a] significant range of protected speech and expression [was] punishable and might be deterred by the literal wording of the statute." *Id.* 482 U.S. at 456–57, 107 S.Ct. at 2507 (*quoting Hill v. City of Houston,* 789 F.2d 1103, 1110 (5th Cir.1986)). Affirming that decision, the Supreme Court recognized further that since other Texas penal statutes already covered obstructive conduct that went beyond mere words, the "enforceable portion of the [Houston] ordinance deals not with core criminal *conduct,* but with speech.... [because it exists to] prohibit[ ] *verbal* interruptions of police officers." *City of Houston v. Hill,* 482 U.S. at 460–61, 107 S.Ct. at 2509 (emphasis added) (footnote omitted). And, since the language of the ordinance

11. Having concluded that Mr. Hallstrom's claims are barred by the statute of limitations, this analysis focuses on Mrs. Hallstrom's constitutional challenges to Idaho Code § 18–705.

prohibited speech that "in any manner ... interrupt[ed]" an officer, the Court characterized the language of the Houston ordinance as "sweeping." *Id.* at 462, 107 S.Ct. at 2510.

Previously, this court found that Mrs. Hallstrom had standing to challenge the Garden City Defendants and Ada County Defendants under Idaho Code § 18–705. Memorandum Opinion & Order, filed May 13, 1988, at 5. Nevertheless, at this juncture, this court seriously questions whether Mrs. Hallstrom has standing to launch a facial challenge against Idaho Code § 18–705. Mrs. Hallstrom asserts that the situation presented in *Hill* is sufficiently analogous to this situation so as to provide her with standing. In *Hill*, a "gay" activist had been arrested four times for violating the Houston ordinance; the last arrest involved only a verbal "interference" with police conduct. Hill sought an order permanently enjoining enforcement of the ordinance and the Supreme Court concluded that Hill had demonstrated a "genuine threat of enforcement" of the ordinance against his future activities. *City of Houston v. Hill*, 482 U.S. at 459–60 n. 7, 107 S.Ct. at 2508 n. 7. Despite Mrs. Hallstrom's attempt to equate herself with Hill and urge this court to find that she was arrested because she was "verbally challenging police questioning," this court finds that Mrs. Hallstrom's conduct went beyond verbal challenges. Having found that Mrs. Hallstrom was properly arrested under Section 18–705 because of her unlawful conduct and not because of her speech, unlike Hill, she has not elevated herself to the role of "citizen provocateur." *Id.*[12] And even assuming, arguendo, that Mrs. Hallstrom does have standing, this court finds that her facial challenge must fail.

Mr. and Mrs. Hallstrom's Motion for Summary Judgment, which was filed principally against the Ada County Defendants, reveals that more arrests occur per year under the Idaho statute than under the Houston ordinance. Motion for Summary Judgment, filed Sept. 4, 1990, at 5–6. Based on this fact, Mrs. Hallstrom urges this court to find that Section 18–705 is unconstitutional on its face. Such reasoning, however, completely discounts a critical difference between the Houston ordinance and the Idaho Statute: The Houston ordinance is essentially duplicated under similar provisions contained in the Texas Penal Code and, as applied to Mr. Hill, in the absence of a violation of law, the ordinance could be and was being used to arrest *solely* for the exercise of free speech.

Clearly, "[c]riminal statutes must be scrutinized with particular care ... those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston v. Hill*, 482 U.S. at 459, 107 S.Ct. at 2508 (citations omitted). In "scrutinizing" the language of Section 18–705, this court fully embraces the concept recognized in *Hill* that: "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462–63, 107 S.Ct. at 2510. However, the Houston ordinance is further distinguished from Idaho Code Section 18–705, since it does not use the term "interrupt" and, on its face, the statute does not implicate mere "speech" or reach a "substantial" amount of constitutionally protected conduct.

This court would expect that based on reasoning contained in *Hill*, officers operating under an obstruction of justice statute in Idaho, and throughout the nation, would certainly comply with the following directive: "[I]n the face of verbal challenges to police action, officers and municipalities must respond with restraint." *City of Houston v. Hill*, 482 U.S. at 471, 107 S.Ct.

---

**12.** Where, as here, the plaintiff is found to have engaged in conduct which is clearly proscribed by Idaho Code § 18–705, Mrs. Hallstrom cannot complain of the vagueness of the law as applied to the conduct of others. *United States v. Doremus,* 888 F.2d 630, 634 (9th Cir.1989), *cert. de-* *nied,* — U.S. —, —, 111 S.Ct. 751, 752, 112 L.Ed.2d 772 (1991) (*citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982)).

**1456**

at 2515. Indeed, a "certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive." *Id.* at 472, 107 S.Ct. at 2515.

 Yet, in ruling in this area, courts must be mindful that facial challenges are not countenanced in the ordinary course because "it can seldom be appropriate ... to exercise any such power of prior approval or veto over the legislative process." *Younger v. Harris,* 401 U.S. 37, 53, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971). Moreover, where the courts of a state could adopt a construction of a statute that eliminates the constitutional defects, federal courts should defer. *IDK, Inc. v. Clark County,* 836 F.2d 1185, 1191 (9th Cir.1988) (*citing Time, Inc. v. Hill,* 385 U.S. 374, 397, 87 S.Ct. 534, 546, 17 L.Ed.2d 456 (1967); *Harrison v. NAACP,* 360 U.S. 167, 176–77, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959)).

This court notes that unlike the Houston ordinance which had not been subjected to judicial review, the Idaho appellate courts have had an opportunity to review the language of Idaho Code § 18–705, and such review has taken place *since* the decision handed down in *Houston v. Hill. See, e.g., State v. Wilkerson,* 114 Idaho 174, 755 P.2d 471 (Ct.App.), *aff'd* 115 Idaho 357, 766 P.2d 1238 (1988). Although the circumstances presented in the *Wilkerson* case differ markedly from the case at bar, it is significant that the appellate courts of the State of Idaho did not strike down Idaho Code § 18–705 as facially overbroad or vague.[13]

Instead, in analyzing Section 18–705, the Idaho Court of Appeals acknowledged that "an individual cannot be convicted of a crime for failing to obey a police officer's command if that command itself is violative of the United States Constitution." *State v. Wilkerson,* 114 Idaho at 178, 755 P.2d at 475 (citations omitted). The court held that "where an individual refuses to obey an order or obstructs an act of a public officer

which is contrary to law, be it a statute or constitution, that individual does not violate I.C. § 18–705." *Id.* at 180, 755 P.2d at 477. In reaching this conclusion, the court interpreted the word "duty" as used in Section 18–705 "to encompass only those lawful and authorized acts of a public officer." *Id.*

Thus, if Officer Snapp was not acting within his duty when he demanded that Mrs. Hallstrom present a driver's license and proof of insurance or if such demand could be considered violative of the state laws or the Constitution, Mrs. Hallstrom could not have been charged under Section 18–705. Correspondingly, if requiring an arrestee to submit to booking procedures prior to taking them before a magistrate violated state law or the Constitution, then Mrs. Hallstrom could not be charged with failing to submit to the booking process under Section 18–705. In this case, it cannot be said that Officer Snapp and the Officers at Ada County Jail were acting outside their duties. Therefore, Mrs. Hallstrom's disobedience of these officers violated Idaho Code § 18–705. *Cf. State v. Wilkerson,* 114 Idaho at 181, 755 P.2d at 478 (Burnett, J., dissenting).

Under our constitutional system, "courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma,* 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973) (citation omitted). Absent a finding that Idaho Code § 18–705 implicates a "substantial amount of constitutionally protected conduct," this court finds that striking down Section 18–705, based on a facial vagueness review, would be improper. *Cf. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. at 494, 102 S.Ct. at 1191.

 Facial invalidation is "strong medicine" which should be used "sparingly and *only as a last resort." Broadrick v. Oklahoma,* 413 U.S. at 613, 93 S.Ct. at 2916. Based on the record, this court concludes that Section 18–705 does not reach a suffi-

---

**13.** And having compared the language contained in the statute at issue in *Hill* to the Idaho statute, it seems reasonable that Idaho courts would not strike down that statute despite the disposition in *Hill.*

cient amount of activities protected by the Constitution to justify a dose of that medicine.[14] Accordingly, summary judgment in favor of defendants appears appropriate.

2. "As Applied" Challenge to Idaho Code § 18–705.

 Pursuant to the reasoning in *City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), Mrs. Hallstrom also requests this court to find Idaho Code § 18–705 unconstitutional as applied to her. To successfully challenge a statute "as applied," Mrs. Hallstrom must demonstrate that although the application of the statute is sometimes valid, its application was not valid under the circumstances presented in this case. However, as much as Mrs. Hallstrom urges this court to conclude that the actions of the defendants violated her right to free speech, this court is unable to do so.

Having previously found, as a matter of law, that Mrs. Hallstrom's arrests by the Garden City Defendants and the Ada County Defendants were lawful, this court must also conclude that Mrs. Hallstrom did not have a constitutional right to immediate liberty. *Higbee v. City of San Diego*, 911 F.2d 377, 379 (9th Cir.1990). The Ada County Defendants were permitted to detain her, whether a misdemeanor arrestee or a felony arrestee, for the usual post-arrest procedures, including booking. *Id.* Moreover, the Ninth Circuit Court of Appeals has expressly acknowledged that "[t]o require that those likely to continue to break the law be processed in a custodial manner certainly seems rational." *Id.*

"Indeed, it would border on the irrational to require the release in the field of those arrested for a public offense who showed promise of continuing immediately to engage in their illegal conduct." *Id.* at 379–80. Given Mrs. Hallstrom's statement at the time of the stop by Officer Snapp and her continuing claims that she is not required to carry a driver's license, the reasoning in *Higbee* militates a finding that Mrs. Hallstrom's arrest was warranted and proper.[15]

With respect to the Garden City Defendants as well as the Ada County Defendants, Mrs. Hallstrom has failed to establish that merely her speech, and not her conduct, precipitated her arrest and citation under Section 18–705. *United States v. Austin*, 902 F.2d 743, 744 (9th Cir.1990). On the contrary, her conduct in failing to present a driver's license and failure to present proof of insurance as well as her conduct in failing to participate in the booking procedures, prompted charges under the challenged statute. Mrs. Hallstrom can produce no authority which stands for the proposition that, once validly stopped, an individual has a constitutional right not to present a driver's license or proof of insurance when demanded by a police officer, nor that an individual, once arrested, has a constitutional right to refuse to comply with the booking process incident to an arrest.

The Ada County Defendants appropriately state that Mrs. Hallstrom has mischaracterized the rights she attempts to assert in this lawsuit as rights of free speech arising

---

**14.** Notwithstanding a finding that Mrs. Hallstrom's "facial challenge" fails, this court does not go so far as to hold that the statute is completely incapable of unconstitutional application. Therefore, this decision *should not* be considered to immunize Section 18–705 from future challenges to its application. *Cf. IDK, Inc. v. Clark County,* 836 F.2d 1185, 1191 (9th Cir. 1988).

**15.** To the extent Mrs. Hallstrom challenges the municipal policies of Ada County and Garden City in terms of allowing their officers to arrest and detain persons pursuant to Idaho Code § 18–705, Mrs. Hallstrom fails to state a viable constitutional claim. True, in a case challenging the validity of policies related to arrests for

misdemeanor traffic offenses, the Ninth Circuit Court of Appeals has acknowledged that a municipality may be found liable under Section 1983, where a plaintiff proves that a municipal employee was not adequately trained and that the constitutional wrong was caused by a failure to train. *Tanner v. Heise,* 879 F.2d 572, 582 (9th Cir.1989) (citation omitted). However, based on the record, Mrs. Hallstrom has given no basis upon which this court can conclude that there existed in Garden City or Ada County any inadequacy of training which amounted to " 'deliberate indifference' to the rights of persons with whom the [defendants' employees came] into contact." *Id.* at 583 (citation omitted).

under the First Amendment. Indeed, Mrs. Hallstrom has not cited any authority which suggests that the Ada County Defendants did not have a right to book her or that she had a constitutional right to resist being booked. And, with respect to the delay associated with bringing Mrs. Hallstrom before a magistrate, the Ada County Defendants maintain that any delay was associated with Mrs. Hallstrom's refusal to be booked. As previously shown, Mrs. Hallstrom resisted the booking process and was issued a citation for her refusal. Therefore, this court finds that Idaho Code § 18–705 was constitutionally applied to Mrs. Hallstrom.

In summary, as much as Mrs. Hallstrom would like this court to strike down Idaho Code § 18–705, under an analysis similar to *Houston v. Hill*, based on the undisputed facts and the applicable law, this court finds that such would not be appropriate.

### D. *The Summary Judgment Standard*

Summary judgment is appropriate only if no genuine issues of material fact exist. *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984). This court must view all facts in the record and all inferences drawn from them in the light most favorable to the Hallstroms. *Wood v. Ostrander*, 879 F.2d 583, 586–87 (9th Cir. 1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Supreme Court noted that summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." However, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250, 106 S.Ct. at 2511. Additionally, the court noted that "[o]nly disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* If the *factual context renders them implausible*, a party must present more persuasive evidence to support the claim than would be otherwise necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

It is well settled that a party, in defending against a motion for summary judgment, may not simply rest upon the bare pleadings.[16] As the Ninth Circuit stated in *United States v. Allen*, 578 F.2d 236, 237 (9th Cir.1978): "In order successfully to oppose a motion for summary judgment, a party may not rely solely on conclusory allegations in the pleadings ... but must, instead, offer some evidence at least outlining a factual dispute" (citations omitted). Rule 56(e) required Mrs. Hallstrom to go beyond the pleadings and by affidavits, or by depositions, or by answers to interrogatories or admissions on file designate specific facts showing there is an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The mere assertion that some facts remain disputed is insufficient to survive a motion for summary judgment. There must be sufficient evidence upon which a jury could reasonably find for the plaintiff.

Based on the circumstances presented in this case, together with the governing law, a reasonable jury could not return a verdict in favor of the Hallstroms. Therefore, pursuant to the standard delineated above, summary judgment in favor of the defendants is warranted.

---

**16.** *See also* Fed.R.Civ.P. 56(e), which provides in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this

rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

U.S.C.S. Court Rules, Federal Rules of Civil Procedure, Rule 56(e) (Law. Co-op. 1987 & Supp. 1990).

E. *Conclusion*

This court notes that plaintiffs seem to consider themselves "constitutionalists" who are "extremely active and vocal in pointing out abuses in government." Complaint, filed Dec. 22, 1987, at 8. The Hallstroms have expended much personal effort to establish constitutional violations in this case. Mindful of these efforts and the fact that plaintiffs are not formally trained in the law, this court has made every effort to construe the pleadings liberally and has given careful consideration to the arguments of these pro se litigants. *See Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc).

Notwithstanding such consideration, however, based on the applicable law and the circumstances presented in this case, this court finds that Mr. and Mrs. Hallstrom were not deprived of any rights secured by the Constitution and laws, and therefore, they are not entitled to any type of relief—declaratory, monetary or otherwise. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Summary judgment in favor of the defendants is warranted, and Mr. and Mrs. Hallstrom's Section 1983 action must be dismissed.

### III. ORDER

Based on the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the Garden City Defendants' Motion for Summary Judgment should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that the Ada County Defendants' Motion for Summary Judgment should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' Motion for Summary Judgment, should be, and is hereby, DENIED, and that this action shall be DISMISSED.