\* The panel unanimously finds this case suitable for decision without oral argument. Fed.

■ There is no need for a formal consolidation order for cases to be "related" under section 4A1.2. *United States v. Bachiero*, 969 F.2d 733, 734 (9th Cir.1992). The rule is "all prosecutions combined for trial or sentencing [count] as a single conviction." *United States v. Arnold*, 981 F.2d 1121, 1122 (9th Cir.1992). Smith's prior convictions were sentenced in the same proceeding by the same judge under the same docket number. This satisfies section 4A1.2. *See Bachiero*, 969 F.2d at 734 (cases related where defendant was sentenced in separate cases with different case numbers by the same court in one proceeding). If the trial court "believed the ends of justice required the [assault] cases to be consolidated for sentencing," we need inquire no further. *See United States v. Chapnick*, 963 F.2d 224, 229 (9th Cir.1992).

### VI. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.

**Susan HALLSTROM; Robert Hallstrom, Plaintiffs–Appellants,**

**v.**

**CITY OF GARDEN CITY; Randy W. Snapp; Sgt. Thurston; Vaughn Killeen, Sheriff; Mike Roberts, et al., Defendants–Appellees.**

No. 91–35662.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 15, 1992.\*

Decided April 12, 1993.

---

R.App.P. 34(a); Ninth Circuit Rule 34–4.

1474

Robert C. Hallstrom, pro se.

Susan Hallstrom, Boise, pro se.

James J. Davis, Davis, Wright, Tremaine, Boise, ID, and John L. King and Frank P. Kotyk, Cantrill, Skinner, Sullivan & King, Boise, ID, for defendants-appellees.

Before: WRIGHT, FLETCHER and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Susan and Robert Hallstrom appeal the dismissal on summary judgment of their 42 U.S.C. § 1983 action. They describe themselves as self-taught "legalists" active and vocal in defending their constitutional rights. They claim violations of their rights stemming from the conduct of Ada County, Garden City, and each governmental entity's officers during the arrest of Mr. Hallstrom in March 1982 and the arrest and incarceration of Mrs. Hallstrom in June 1987. They also challenge the constitutionality of Idaho Code § 18–705 (1987), which prohibits obstruction of justice. They seek declaratory, injunctive, and monetary relief, including exemplary damages. The district court granted summary judgment for defendants, and denied summary judgment to plaintiffs, finding that Mr. and Mrs. Hallstrom were not deprived of any constitutional rights. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we find that Susan Hallstrom's right to be taken before a magistrate in a timely fashion was violated, that she was detained unjustifiably after a judge ordered her released on bail, and that she raises cognizable constitutional claims with respect to her conditions of confinement, we reverse in part and affirm in part.

## I. PROCEDURAL HISTORY

The Hallstroms filed a complaint naming the City of Garden City, the arresting Garden City police officers, Ada County, the Ada County Sheriff and Jail Commander, the State of Idaho, the City of Boise, and other unknown "Doe" officials as defendants. The Garden City police officers were sued in their official and individual capacities, as was the Ada County Jail Commander; the sheriff was sued only in his official capacity. The City of Boise filed a motion for judgment on the pleadings in which the State of Idaho joined. Garden City and the Garden City police officers filed a motion to dismiss. The district court granted the motion for judgment on the pleadings and dismissed the City of Boise and the State of Idaho. The court initially denied the dismissal of the Garden City defendants, but did dismiss the punitive damages claims against Garden City. The Hallstroms do not appeal these determinations. The Garden City defendants and the Ada County defendants then separately filed motions for summary judgment. The Hallstroms filed a cross-motion for summary judgment against Ada County and its officials seeking declaratory

relief only. They did not file any motion with respect to the Garden City defendants. The district court granted summary judgment for the Garden City and Ada County defendants against the Hallstroms, denied the plaintiffs' cross-motion, and entered a separate judgment dismissing the action as to all defendants including the "Does" 811 F.Supp. 1443. Before reaching the issues raised by the Hallstroms or considering the principal defenses of defendants, the court decided three subsidiary issues. First, it found that the Hallstrom's state law claims were barred by failure to comply with the procedural requirements of the Idaho Tort Claims Act, thus entitling the Ada County defendants to dismissal of all state claims. Second, it determined that the Ada County Jail Commander was shielded by a qualified immunity defense with respect to his individual liability.[1] And third, it dismissed the punitive damages claim against Ada County. On appeal, the Hallstroms seek reversal of the district court's summary judgment in its entirety.

## II. FACTS

Mr. Hallstrom was arrested in 1982 for obstructing justice by failing to produce identification upon request. He was booked and released. At no time in the course of the encounter was he imprisoned. The charges were dismissed in 1983.

On a Friday morning in 1987, Mrs. Hallstrom's vehicle was stopped by an officer of the Garden City Police Department for a broken taillight. When she refused to show the officer her driver's license or proof of liability insurance coverage, she was arrested. She told the officer that she did not believe Idaho law required her to carry a license, and that, in any event, requiring her to carry one violated her right to travel. Officer Snapp arrested her, searched her car, and transported her

to the Ada County jail. Officer Thurston oversaw the impoundment of the car.

While in custody, Mrs. Hallstrom was cited for motor vehicle violations.[2] She repeatedly requested presentation to a magistrate and refused to answer routine booking questions or to submit to routine booking procedures, on the ground that such questions and procedures violated her constitutional rights. Because of Hallstrom's failure to cooperate, the county officials charged her with obstruction of justice. They ignored her demands to be taken before a magistrate, and simply incarcerated her until she agreed to cooperate with county booking procedures. Susan Hallstrom was held in Ada County jail for six days. She was not taken before a judicial officer until Monday afternoon, four days following her arrest, at which time she was arraigned before a state court judge and ordered released on bail. Only after her husband obtained a court order requiring her to comply with booking procedures did she submit to answering questions, and allow fingerprints and photographs to be taken. Late Wednesday afternoon, two days after the state court judge had ordered her released, the county officials released Mrs. Hallstrom on bail.

## III. MR. HALLSTROM'S CLAIMS

 With respect to Mr. Hallstrom's arrest, appellees argue that any claims arising from events occurring in 1982 are time-barred. The applicable statute of limitations for Section 1983 actions is the limitations period for personal injury actions in the state where the action arose. *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989). In Idaho, the applicable statute is Idaho Code § 5–219(4) (1990), which provides for a limitations period of two years from the date the cause of action accrues. Using the broadest interpretation possible, the latest date

---

**1.** Later in the opinion, the district court held that all Ada County defendants were immune.

**2.** It is not clear from the record before us exactly what citations Mrs. Hallstrom received prior to the effort to complete her booking. Nor can we determine whether she also was charged

(rather than cited) with obstructing justice for failing to produce the documentation requested at the site of the arrest. For our purposes the charging history is not controlling. According to appellees, it is Ada County's "policy" to book anyone arrested.

that Mr. Hallstrom could have become aware that his civil rights were violated was January, 1983, when the charges against him were dismissed. The Hallstroms filed their complaint in 1987; therefore, Mr. Hallstrom's claims are time-barred. We affirm the district court's dismissal of his claims.

## IV. MRS. HALLSTROM'S ARREST & SEARCH

Mrs. Hallstrom contends that Officer Snapp illegally arrested her and searched her car and personal effects without probable cause in violation of her Fourth Amendment and other constitutional rights.

■ No one questions that Officer Snapp had probable cause to stop her vehicle when he observed its broken taillight. Idaho Code § 49–906 (1988); *In re Griffiths,* 113 Idaho 364, 744 P.2d 92 (1987) (traffic offenses give police probable cause to stop vehicle). Mrs. Hallstrom erroneously argues that Idaho law does not require her to have a driver's license as a condition of driving a motor vehicle in Idaho. To the contrary, Idaho law makes it a misdemeanor to drive a vehicle without a driver's license. Idaho Code §§ 49–316 (formerly § 49–319), 49–236 (1988 & Supp.1992). Operation of a motor vehicle is a "highly regulated activity, therefore the driver accepts the regulatory burden along with the benefit of using the public roads." *State v. Henderson,* 114 Idaho 293, 756 P.2d 1057, 1070 (1988) (Walters, J., dissenting). The laws requiring drivers to carry proof of insurance and registration are valid laws

enacted by the state of Idaho. Idaho Code § 49–1232 (formerly § 49–245) (1988 & Supp.1992); *see State v. Gibson,* 108 Idaho 202, 697 P.2d 1216, 1218 (App.1985); *State v. Reed,* 107 Idaho 162, 686 P.2d 842 (App. 1984). Under Idaho Code § 49–1407 (1988), an officer has the option of taking the person "without unnecessary delay" before a magistrate rather than issuing a traffic citation, "[w]hen the person does not furnish satisfactory evidence of identity or when the officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court." Because Mrs. Hallstrom failed to identify herself [3] and, by her actions, demonstrated that she was likely to continue driving without a license, Officer Snapp did not violate her rights under Idaho law or the Constitution by making the arrest.

■ Nor did the officer violate Mrs. Hallstrom's Fourth Amendment rights in searching the car and items in it within her reach. Searches incident to lawful arrest constitute a well-established exception to the warrant requirement of the Fourth Amendment. *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); *see also New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *United States v. Lorenzo,* 867 F.2d 561, 562 (9th Cir. 1989). Because she committed a misdemeanor in Officer Snapp's presence, he had probable cause to arrest her. His subsequent search of the vehicle and its contents was proper and reasonable.[4] We affirm

---

**3.** Hallstrom now contends she carried other identification but did not produce it because the officer requested only her license. Her failure to volunteer information which would serve as identification, in combination with her misdemeanor offenses, gave Officer Snapp sufficient reason to arrest her.

**4.** Mrs. Hallstrom argues that Officer Snapp violated her due process rights by arranging for her vehicle to be towed from the parking lot where she had pulled in off the road. It does not appear that the officer impounded the car in order to search it since he already had conducted the search incident to her arrest. *United States v. Feldman,* 788 F.2d 544, 553 (9th Cir. 1986) (discussing unlawful motivation for impounding and inventorying vehicle), *cert. de-*

*nied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). His decision to direct its removal under the supervision of another officer is consistent with an independent "community caretaking function." *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973). Under *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976), "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *See also United States v. Griffin,* 729 F.2d 475, 480–81 (7th Cir.), *cert. denied,* 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984). In discharging their community caretaking functions, it was not unreasonable for the arresting officers to protect the car from vandalism or theft by having it towed.

the district court's dismissal of Mrs. Hallstrom's Fourth Amendment claims with respect to the arrest and search.

## V. MRS. HALLSTROM'S ADDITIONAL CLAIMS

Mrs. Hallstrom contends that the county and city officials violated her right to be taken before a magistrate without undue delay, her right to be released upon a court order, and her right to conditions of confinement commensurate with her status as a person awaiting presentation to a judicial officer and due for release on minor traffic citations. We address each of those contentions below. Because we reverse the district court's grant of summary judgment against Mrs. Hallstrom and remand the case on other grounds, we do not reach Mrs. Hallstrom's additional constitutional claims including the constitutionality of the Idaho obstruction of justice statute.[5] The record is not entirely clear as to what determinations the state court made regarding the obstruction charges.[6] Because an obstruction charge is not necessary to support either the initial arrest or booking under a general booking policy, we decline to review any rulings in this regard.

### A. Delayed Hearing Before a Magistrate

Two provisions of the Idaho Code spell out postarrest procedures. Where an arrest is made without a warrant, "the person arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate." Idaho Code § 19–615 (1987). Where an arrest is made for "any misdemeanor violation of the [motor vehicle laws]" and the arrested person "does not furnish satisfactory evidence of identity," the arresting officer has the option of issuing a traffic citation (and releasing the offender) or taking her "without unnecessary delay before the proper magistrate as specified in section 49–1411 ..." Idaho Code § 49–1407 (1988). The discretion is very narrow: the arrested person either must be released or taken before a magistrate.[7]

In addition to their duties under state law, the officers were subject to a constitutional duty to ensure that Mrs. Hallstrom be taken before a judicial officer "promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 869, 43 L.Ed.2d 54 (1975).[8] All we must decide is whether they or the county officials[9] to

United States v. Johnson, 734 F.2d 503, 505 (10th Cir.1984); United States v. Griffin, 729 F.2d at 480.

5. Hallstrom also charges defendants with violating her right to remain silent, her right of free speech, her right to counsel and her right to be free from cruel and unusual punishment.

6. See supra note 2.

7. In case these provisions leave any doubt, another section clarifies the nature of this discretion: "Whenever a person is halted by a peace officer for a misdemeanor traffic violation and is not taken before a magistrate as required ... the officer shall issue a citation." Idaho Code § 49–1409 (1988); see also Idaho Code § 49–1411 (1988) ("[a] person shall be taken before a magistrate or given a traffic citation and the charge subsequently processed, as provided by rule of the supreme court"). Idaho Crim.R. 5(b) (1992) provides in relevant part:

A defendant arrested, whether or not pursuant to a warrant, shall be taken before a magistrate in that judicial district without unreasonable delay. In no event shall the delay be more than twenty-four (24) hours follow-

ing the arrest excluding Saturdays, Sundays, and holidays.

8. Mrs. Hallstrom does not allege that the officers should have exercised their discretion to release her on a traffic citation. She only insists that they be held to their statutory and constitutional duty to provide for a prompt hearing before a magistrate. Thus *Higbee v. City of San Diego*, 911 F.2d 377 (9th Cir.1990), relied on by Garden City, is inapposite. There the plaintiffs argued that the officers' decision not to issue them a field release citation, as they had done on a previous occasion, constituted impermissible punishment. Three plaintiffs were released from custody within three hours, the fourth within eight hours. The opinion does not indicate whether a hearing before the magistrate precipitated the releases.

9. The district court determined that the Ada County defendants were entitled to dismissal of all state law claims. We agree that Susan Hallstrom failed to comply with procedures set forth by the Idaho Tort Claims Act. Idaho requires that actions against political subdivisions (including counties and cities) or their employees be filed within a 180–day period of limita-

whom they delivered Hallstrom complied with this obligation. Recently the Supreme Court indicated that a jurisdiction which "provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *County of Riverside v. McLaughlin,* — U.S. —, —, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991).

■ The underlying rationale for according an arrested individual a prompt probable cause hearing before a magistrate is set forth in *Gerstein:*

> [A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest.... When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty.

420 U.S. at 113–14, 95 S.Ct. at 863. Concerned that local government should have some flexibility and latitude, the *McLaughlin* Court created a burden of proof mechanism by which to evaluate claims of delay. A person taken before a judicial officer within the 48-hour period may still challenge the arresting officials for unreasonable delay, but she bears the burden of proving that "her probable cause determination was delayed unreasonably." — U.S. at —, 111 S.Ct. at 1670. The Court gave as examples of reasonable delays: "unavoidable delays in transport[ation]," [10] "late-night bookings where no magistrate is readily available," [11] lack of availability of arresting officer,[12] and "other practical realities." [13] . *Id.* Examples of unreason-

---

tions. Idaho Code § 6–906 (1990). While the Hallstroms' federal complaint was filed within approximately six months of Mrs. Hallstrom's arrest and detention, the Ada County supervisor, responsible for maintaining a record of all tort claims against the county, certified that no claim had been filed by the Hallstroms against Ada County within the requisite period. Mrs. Hallstrom makes no argument that the statute of limitations should be tolled under state law; her state law claims against the county are clearly time-barred. On appeal Hallstrom admits that she did not file a charge against any of the defendants in compliance with state procedural requirements. All charges asserting state law claims are consequently time-barred. *Ortega v. O'Connor,* 764 F.2d 703, 707 (9th Cir.1985), *reversed on other grounds,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987).

That is not to say that Susan Hallstrom may not assert *federal* claims based on the defendants' failure to comply with state law. We recognize Section 1983 actions grounded on claims of the deprivation of state-created liberty or property interests. *See infra* note 22; *see also Davis v. Sherer,* 468 U.S. 183, 193 n. 11, 104 S.Ct. 3012, 3018 n. 11, 82 L.Ed.2d 139 (1984).

10. *See, e.g., United States v. Alvarez–Sanchez,* 975 F.2d 1396, 1400 (9th Cir.1992) (delay viewed "in light of the available means of transporta-

tion" or "the logistics involved") (interpreting 18 U.S.C. § 3501).

11. *See, e.g., United States v. Doe,* 701 F.2d 819, 824 (9th Cir.1983) ("[t]he particular facts in this case persuade us that the delay here was reasonable. The government made a good faith effort to arraign Doe as soon as possible, but no magistrate was available until the morning") (interpreting 18 U.S.C. § 5033 (1976)).

12. *See, e.g., Doe,* 701 F.2d at 824 ("[t]he agents were extremely busy the day Doe was taken into custody, and they had to give priority to more urgent cases, including a woman in late pregnancy").

13. The Ninth Circuit has resisted creating a per se rule for evaluating the reasonableness of delay. *Kanekoa v. City and County of Honolulu,* 879 F.2d 607, 610 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 2055, 114 L.Ed.2d 460 (1991). Instead, it has looked to the existence of "exigent circumstances" to justify delay. *See, e.g., United States v. Doe,* 701 F.2d 819, 824 (9th Cir.1983); *Bernard v. City of Palo Alto,* 699 F.2d 1023, 1024 (9th Cir.1983). For a definition of "exigent circumstances," see *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1455 (9th Cir.1991)

able delays include delays "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual,[14] or delay for delay's sake." *Id.* After a 48–hour period has elapsed, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* The Court specifically excluded justification based on difficulties consolidating pretrial proceedings or intervening weekends and holidays. *Id.*

Mrs. Hallstrom was arrested on Friday morning at approximately 9:00 a.m. Although she repeatedly demanded to see a magistrate, she was not taken before a judge until approximately 4:00 p.m. on Monday afternoon, some seventy-nine hours later, despite the fact that a magistrate is on call twenty-four hours a day in Ada County, and despite the location of the magistrate's office in the same building as the Ada County jail.[15] Hallstrom indicates that her arraignment was conducted by video, a technique which presumably affords magistrates and judges more ready access to pretrial detainees. Nevertheless, she alleges that upon demanding a hearing before the magistrate, she was told "demand all you want, court is at 3 p.m. Monday." Plaintiff's "Asseveration" at 5 *contained in* Addendum to ER, *Hallstrom v. City of Garden City*, 811 F.Supp. 1443 (1991).[16]

■ To justify delay beyond the 48–hour period mandated by the Court, defendants must establish that an emergency or extraordinary circumstances occasioned the delay in bringing Susan Hallstrom before the judge. Mindful that *McLaughlin* was decided after the detention at issue in this case, we also analyze the justification for delay in terms of the then prevailing "exigent circumstances" standard. *See, e.g., Kanekoa v. City & County Honolulu*, 879 F.2d 607, 611 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 2055, 114 L.Ed.2d 460 (1991); *United States v. Doe*, 701 F.2d 819, 824 (9th Cir.1983); *Bernard v. City of Palo Alto*, 699 F.2d 1023, 1024 (9th Cir.1983). Under either analysis, the defendants' justification fails. The only reason given by Ada County for delaying Susan Hallstrom's hearing is that she refused to comply with all elements of the booking procedure, including furnishing the police with satisfactory evidence of her identity.[17] The county defendants have made no showing that this delay was justified by reasonable and prompt administrative procedures, or that the delay was anything other than a coercive measure imposed after it became clear that she was not going to answer booking questions without a court order and was not going to change her mind. Indeed, the county defendants ascertained Susan Hallstrom's identity relatively promptly from papers found in her possession.

The defendants and the district court appear to believe that the constitutional *duty* to ensure that an arrested individual re-

(Hall, J., concurring) (includes prevention of physical harm or the destruction of evidence or escape, or "some other consequence improperly frustrating legitimate law enforcement efforts"). One "practical reality" held to amount to circumstances which reasonably occasion delay is the insobriety of the arrested individuals. *See Kanekoa*, 879 F.2d at 611 (intoxication caused delay). *McLaughlin* does not displace this method of analysis except as it places the burden of proof on the detainee to establish the lack of "exigent circumstances" if held for less than forty-eight hours. *McLaughlin,* —— U.S. at ——, 111 S.Ct. at 1670.

**14.** *See, e.g., United States v. Jernigan*, 582 F.2d 1211, 1213–14 (9th Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978) (where arresting officer failed to take defendant to magistrate on demand and stated that defendant "would have a long weekend to think about the matter" in jail, court persuaded that agent "deliberately delayed arresting [defendant] until a time when, as he well knew, [defendant] would not be able to go before a magistrate").

**15.** *See United States v. Jernigan*, 582 F.2d at 1213 (noting the proximity of the DEA office to the U.S. Courthouse).

**16.** All citations to the district court record ("DCR") or the excerpts of record ("ER") are part of the record in this case.

**17.** Notably, this deficiency is the very one which Idaho law makes clear triggers the need to take an individual before a magistrate. Idaho Code § 49–1407(1) (1988).

ceives a prompt probable cause hearing before a judicial officer is displaced indefinitely by the *right* to book arrested individuals in accordance with county policy. The district court's holding that the right to book a person lawfully arrested justified detaining her without limit (and without access to a magistrate to pass on the lawfulness of the arrest) in order to "coerce" compliance with booking, Order Granting Defendants' Motions for Summary Judgment at 23, *contained in* ER, is simply wrong. While the booking process itself (and its attendant fingerprinting and photographing) may be entirely proper, it does not trump the Fourth Amendment proscription against over-long detention based solely on a probable cause determination made by the arresting officer.

An arresting officer's determination of probable cause justifies only a "brief period of detention to take the administrative steps incident to arrest." *Gerstein*, 420 U.S. at 114, 95 S.Ct. at 863. The Court attached special significance to the shifting calculus of interests from the state to the individual "in custody," especially one in custody for a "prolonged" period. It emphasized the "high stakes" involved for individuals' liberty interests and undertook to ensure "meaningful" Fourth Amendment protection. Under *Gerstein*, refusal to cooperate with booking procedures cannot excuse extended detention based solely on the arresting officer's assessment of probable cause. We note that the officials had other options including completing the booking after the probable cause determination or completing a partial or "Doe" booking; they could have completed booking after the probable cause determination [18] or completed a partial [19] or "Doe" booking. Four days of incarceration is not a "brief period." All of the concerns raised by the Court in *Gerstein* are implicated

here. Susan Hallstrom was in custody for a prolonged period. The county's interest in booking her, after reasonable attempts to do so have proven futile, does not outweigh her constitutional right to be taken before a magistrate. Booking may not serve as a threshold condition which, if not satisfied, indefinitely suspends the operation of the Fourth Amendment. *McLaughlin* admonishes that "the police should make every attempt to minimize the time a presumptively innocent individual spends in jail." —— U.S. at ——, 111 S.Ct. at 1670.

We are not persuaded by the reasoning of the district court:

> Defendants are certainly entitled to a prompt appearance before a magistrate. *However,* where as here, Sue Hallstrom attempted to thwart the administrative steps incident to her arrest, she cannot later declare that constitutional deprivations occurred.

Order Granting Defendants' Motions for Summary Judgment at 21 n. 9 *contained in* ER; *see also Shaw v. Boise City*, No. 84–1088, 1985 WL 11183 (D.Idaho, Sept. 12, 1985) (Ryan, J.); *Gibson v. Crowell*, No. 84–1475 (D.Idaho, Sept. 13, 1985) (McNichols, J.). The fact that the booking process may be constitutional, *Higbee v. City of San Diego*, 911 F.2d 377, 380 (9th Cir. 1990), does not mean that a city or county constitutionally may incarcerate a person indefinitely until she voluntarily submits to booking. Were we reviewing the propriety of a short delay to allow tempers to cool, and the opportunity for calm reconsideration, we might have a different result. In this case, however, the district court allowed a constitutional right to be held hostage for four days to a routine booking practice or policy.[20]

We conclude that on this record the plaintiff has established the liability of Ada

---

**18.** *See, e.g., Amsler v. United States,* 381 F.2d 37, 46 (9th Cir.1967) (appellant taken before judicial officer for arraignment and setting of bail before undergoing booking).

**19.** The defendants possessed several identity cards and a passport from which they could

have extracted much of the information required for booking.

**20.** Nor do we mean to give license to those who would seek to frustrate the booking process or other administrative steps incident to arrest. As we acknowledge, *infra* at 1485, the government has a legitimate interest in orderly booking.

County,[21] the sheriff in his official capacity, and the jail commander, both in his official and individual capacities. As to Garden City and its arresting officers, however, we remand to the district court to determine liability. On remand, the court should consider whether the arresting police officers acted consistently with their statutory[22] and constitutional duties to ensure that Hallstrom be presented promptly to a judicial officer when they delivered her to the Ada County jail for booking prior to presentation.

Turning to the question of damages, we affirm the district court's holding that Ada County is not liable for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). However, we reverse its determination that the defense of qualified immunity shielded the Ada County defendants. The court held that the jail commander benefited from the qualified immunity defense of " 'objectively reasonable reliance on existing law.' [*Kentucky v. Graham,* 473 U.S. 159,] 166–67 [105 S.Ct. 3099, 3105, 87 L.Ed.2d 114] [ (1985) ]." Order Granting Defendants' Motions for Summary Judgment at 18 *contained in* ER. It stated that in the light of previous decisions and "because it cannot be said that the actions of the Ada County Defendants were 'apparently' unlawful, the defense of qualified immunity applies. *Anderson v. Creighton,* 483 U.S. 635, 640 [107 S.Ct. 3034, 3039, 97 L.Ed.2d 523] (1987). *See, e.g., Malley v. Briggs,* 475 U.S. 335, 341 [106 S.Ct. 1092, 1096, 89 L.Ed.2d 271] (1986)." Order Granting Defendants' Motions for Summary Judgment at 23 *contained in* ER.

■■ The district court erroneously included Ada County and the officials sued in their official capacities among the Ada County defendants for which a defense of qualified immunity is available. A municipality (and its employees sued in their official capacities) may not assert a qualified immunity defense to liability under Section 1983. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980); *Kentucky v. Graham,* 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). Whether the qualified immunity defense applies to the officials of Ada County sued in their individual capacities turns on "the 'objective legal reasonableness' of the action assessed in light of legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. at 639, 107 S.Ct. at 3038 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 & 819, 102 S.Ct. 2727, 2738 & 2739, 73 L.Ed.2d 396 (1982)); *see also Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) ("[w]hether an official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of [his] conduct as measured by reference to clearly established law' ") (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). A two-part analysis is required: "(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871–72 (9th Cir.1993). At the time of Mrs. Hallstrom's incarceration, Supreme Court precedent clearly established

---

**21.** The county has never disputed that its insistence on booking before the prisoner is taken to a magistrate is a policy of the county. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Instead, it has argued, here and in similar actions in district court, that its policy is justified. *See infra,* at 1483–84.

**22.** This court has held that "a violation of state ... law can serve as the basis of a [S]ection 1983 action '[w]here the violation of state law causes the deprivation of rights protected by the Constitution.' " *Draper v. Coombs,* 792 F.2d 915, 921 (9th Cir.1986) (quoting *Wirth v. Surles,* 562 F.2d 319, 322 (4th Cir.1977), *cert. denied,* 435

U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978)). In addition, the laws of Idaho guaranteeing timely presentation to a magistrate, *e.g.,* Idaho Code §§ 19–615, 49–1407, 49–1409, 49–1411, "place[ ] substantive limitations on official discretion" and contain "explicitly mandatory language" sufficient to create a liberty interest protected by the Fourteenth Amendment and actionable under Section 1983. *Mendoza v. Blodgett,* 960 F.2d 1425, 1428–29 (9th Cir.1992), *cert. denied,* — U.S. —; 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993); *see also Haygood v. Younger,* 769 F.2d 1350, 1355 (9th Cir.1985) (en banc), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

that an arrested individual must be taken before a magistrate "promptly after arrest." *Gerstein v. Pugh*, 420 U.S. at 125, 95 S.Ct. at 869. The Court at that time did not set out any specific period of time which could be considered presumptively "prompt." It indicated that an arresting officer's determination of probable cause justifies only a "brief period of detention to take the administrative steps incident to arrest." *Id.* at 114, 95 S.Ct. at 863. The law was clearly settled that Mrs. Hallstrom had a constitutional right to "prompt" presentation to a judicial officer.[23] We find that no "objectively reasonable" official could consider the initial four-day period of incarceration "brief," or Mrs. Hallstrom's presentation to the state court judge "prompt." [24]

■ The fact that prior to its detention of Mrs. Hallstrom, Ada County had been granted summary judgment against other plaintiffs asserting constitutional claims colorably similar to those asserted in this case, *see Shaw v. Boise City*, No. 84–1088, 1985 WL 11183 (D.Idaho, Sept. 12, 1985) (Ryan, J.); *Gibson v. Crowell*, No. 84–1475 (D.Idaho, Sept. 13, 1985) (McNichols, J.), does not alter the result.[25] In neither case did the district court consider *Gerstein* or analyze the Ada County defendants' actions in light of clearly established Ninth Circuit and Supreme Court law. While at one level it may seem harsh not to allow law enforcement officers to rely on local judicial officers' opinions, the Supreme Court requires what is essentially an artificial test, one that specifically looks to objective, not subjective, reasonableness. A judicial officer's misjudgment will not obviate or excuse another official's obligation

to act with *objective* reasonableness. *See Malley v. Briggs*, 475 U.S. at 345–46 & n. 9, 106 S.Ct. at 1098 & n. 9; *Bergquist v. County of Cochise*, 806 F.2d 1364, 1368 (9th Cir.1986), *overruled on other grounds by City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Under the objective test, an official is charged with knowledge of controlling Supreme Court and Ninth Circuit precedent. This is not a case where the underlying facts are unclear or in dispute. *Cf. Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993) (although law as to strip searching misdemeanor detainees clearly established, remanded for "an inquiry as to the facts and circumstances within [the defendants] knowledge"). Defendants acknowledge Mrs. Hallstrom was detained for four days prior to her presentation to a judicial officer. We reverse the district court's determination that the jail commander had qualified immunity from personal liability, and that he and the other Ada County defendants sued in their official capacities were shielded by qualified immunity.

### B. *Continued Detention after Judicial Order Releasing on Bail*

Hallstrom alleges that her continued detention after the Monday appearance in court when she was ordered released on bail by the state court judge amounted to false imprisonment. It does not appear that the judge conditioned his order on Hallstrom's compliance with booking. Defendants admit that on that same day Robert Hallstrom attempted to post bail but that it was not accepted and would not be accepted until Susan Hallstrom submitted to the booking process. They offer as justification for this continued detention that

---

**23.** The Ninth Circuit's law was also clearly established. It employed an "exigent circumstances" test to evaluate compliance with *Gerstein*. *See supra* note 13.

**24.** Because *Gerstein* contemplates a balancing of interests, an "objectively reasonable" decision depends in part on the factual circumstances of the case. Mrs. Hallstrom, arrested for minor traffic violations (none of which ultimately were pursued), and held for obstruction of justice (either for failure to produce her traffic license or for failure to voluntarily comply with

booking) was kept incommunicado for several days without access to a magistrate. The only explanation for delay was to coerce voluntary compliance with booking procedures. No "objectively reasonable" official could view this concern as sufficiently exigent to hold Mrs. Hallstrom for four days.

**25.** These decisions are unpublished and indicate none of the underlying facts. For example they are silent on the length of the delay before the arrested individuals were presented to a magistrate.

it is the policy of Ada County jail not to release an arrested individual until she has submitted to the booking process.

Neither the defendants nor the district court address this second period of incarceration as a distinct and separable event. The defendants deny, without elaboration, Hallstrom's charge of false imprisonment. The district court justifies all six days of incarceration on the same rationale without addressing the effect of the intervening court order to release Hallstrom on the fourth day: " '[I]ncommunicado incarceration' of a person who refuses to comply with booking procedures constitutes neither a violation of substantive or procedural due process under the fourteenth amendment." Order Granting Defendants' Motions for Summary Judgment at 22 *contained in* ER.

As we have pointed out with respect to the pre-presentation period of detention, the question is not whether Ada County has a right to book Susan Hallstrom, or whether the booking procedures themselves are constitutional. The question is whether the county constitutionally may "coerce" Susan Hallstrom to comply with booking procedures once a judicial officer has ordered her released on bail. If the defendants wished to book her before release, among available options were partially booking her on the basis of information gleaned from the identification cards and passport found in her purse or seeking an order from the magistrate directing her to comply with booking. They did not have the right to continue her detention in a "battle of wills" when the detention was allegedly based on the "position ... that she can stay there forever; she will not leave until the fingerprints are taken." Dep. of Robert Hallstrom at 22–23 *contained in* DCR.[26]

## C. *Cognizable Conditions of Confinement Claims*

The district court preserved Hallstrom's "conditions of confinement" claims in an

earlier order but failed to address them when it granted summary judgment. These claims are cognizable under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 1871 & n. 16, 60 L.Ed.2d 447 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1440 n. 7 (9th Cir.1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

■ *Bell v. Wolfish* sets out the standard by which to judge claims of unconstitutional conditions of confinement for pretrial detainees who have "only [had] a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [their] liberty following arrest.' " *Bell*, 441 U.S. at 536, 99 S.Ct. at 1872 (quoting *Gerstein v. Pugh*, 420 U.S. at 114, 95 S.Ct. at 863). The Court held that the government may subject such a detainee to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.*, 441 U.S. at 536–37, 99 S.Ct. at 1873. A court, ruling on these claims, "must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538, 99 S.Ct. at 1873. With respect to the first prong of this test, intent to punish may be discerned if (1) "an alternative purpose to which [the restriction] may rationally be connected is assignable for it" or (2) if the restriction "appears excessive in relation to the alternative purpose assigned [to it]" or, as restated later, "the conditions ... [are] employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Id.* at 538, 539 n. 20, 99 S.Ct. at 1873, 1874 n. 20. As to the second prong of the test, the Court indicated that the government has a legitimate interest in "ensuring a detainee's presence at trial," "maintaining jail security," and in "the effective management of the detention facili-

---

**26.** The county apparently intended to outwait Hallstrom. She relates: "I asked if I was serving a life sentence. They said I was unless I submit[ted] to booking (waiving my rights) and

that I would give up long before they do." Plaintiff's "Asseveration" at 15–16 *contained in* Addendum to ER.

ty once the individual is confined." *Id.* at 540, 99 S.Ct. at 1874. Justice Stevens pointed out these considerations should be examined in the light of the "individual and personal" due process guarantee which "mandates that an innocent person be treated as an individual human being and be free of treatment which, as to him, is punishment." *Id.* at 584, 99 S.Ct. at 1897 (Stevens, J., dissenting).

Since the *Bell* Court was at pains to point out that a probable cause hearing had taken place for the detainees in question and thus that it did not find itself in a *Gerstein* context, *id.* at 533–34, 536, 99 S.Ct. at 1870–71, 1872, we conclude that Hallstrom is entitled *at least* to the protections afforded pretrial detainees. Notably, during the first period of her incarceration, Susan Hallstrom had not been accorded a probable cause hearing and, during the second period, she was detained despite a court order requiring her release. Justice Stevens focussed on "[t]he pretrial detainees whose rights are at stake" as "innocent men and women who have been convicted of no crimes." *Id.* at 579, 99 S.Ct. at 1895 (Stevens J., dissenting). Susan Hallstrom, however difficult to deal with, qualifies for this status.

Hallstrom should not be foreclosed from presenting evidence that might establish liability under *Bell.* The defendants used detention as a means to "coerce" compliance with booking procedures. The detention itself (and her lack of access to a magistrate or release on bail) could be punishment for failing to cooperate. Especially given the alternatives available (including booking over her objections, requesting a booking order, partial booking), six days'

incarceration is "excessive" in relation to its purpose. While the government has a legitimate interest in orderly booking, it does not command as high a priority, for example, as ensuring presence at trial or maintaining jail security. "Effective management" might have been achieved by choosing not to confine Hallstrom (and releasing her on the citations or the bail set by the judge) or by employing the alternatives available to effectuate booking without detention. ·

Hallstrom makes a number of claims detailing the inadequacy of the "conditions of confinement", including lack of access to a telephone, lack of hygienic conditions and privacy, lack of fresh air and exercise, lack of adequate food and liquids which she could eat and drink,[27] and restrictions on her religious expression (both as to diet and attendance at services).[28] Whether or not Hallstrom is ultimately successful in establishing constitutional deprivations, we find these are cognizable claims not appropriate for summary disposition.[29]

In *Redman v. County of San Diego,* 942 F.2d 1435 (9th Cir.1991) (en banc), we determined that in the context of providing for personal security, "[t]he requirement of conduct that amounts to 'deliberate indifference' provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons." *Id.* at 1443. We noted that this standard would "protect against the deliberate, but arbitrary, choices by government." *Id.* We remand to the district court for its determination on the merits, guided by standards at least as solicitous as those applied to pretrial detainees.

---

**27.** In response to questioning about her diet, Susan Hallstrom explained "[w]e've studied—we have arrived at our conclusions on diet by reading medical materials and consulting the Bible as to what foods are permissible and which are forbidden and by reading reports about contamination of food and the contamination of water." Dep. of Susan Hallstrom at 40 *contained in* DCR. "For religious reasons," she relates, "I do not eat pig or things cooked in lard or with lard in them, and I do not drink water with sodium fluoride (rat poison), asbestos, and other chemicals in it." Plaintiff's "Asseveration" at 6 *contained in* Addendum to ER.

**28.** Defendants denied these claims in their Answers but admitted the underlying facts in response to requests for admission.

**29.** Similar complaints were raised on appeal by the *Bell* petitioners and noted by the Court. 441 U.S. at 527 n. 7, 99 S.Ct. at 1868 n. 7 (inadequate phone service, unsanitary conditions, inadequate and unsanitary food, improper restrictions on religious freedom); *id.* at 529 n. 10, 99 S.Ct. at 1868 n. 10 (phone service and special diets for Muslim inmates not before the Court).

## V. CONCLUSION

Since we hold that Susan Hallstrom was deprived of her constitutional right not to be subjected to unreasonable delay in coming before a magistrate, and was held impermissibly after the judge directed her release on bail, we conclude that the Ada County defendants are liable. We affirm the district court's decision that Ada County is not subject to punitive damages. However, we reverse its determination that Ada County and its officials have qualified immunity from either official or personal liability. We remand for the award of compensatory damages against Ada County, the sheriff in his official capacity, and the jail commander in his official and individual capacities. We also remand for a determination as to whether any county official sued in his individual capacity is liable for punitive damages.[30]

As to the Garden City defendants, we remand to the district court for its determination of liability on the merits. Should the court find the Garden City defendants liable, it should make a determination as to damages attributable to the city and to the arresting officers.

On remand, the district court should also determine the merits of Mrs. Hallstrom's claims of unconstitutional conditions of confinement and, if liability is found, any damages assessable against the Ada County defendants.[31]

Mrs. Hallstrom is entitled to costs on appeal.[32] The appellees' request for attorneys' fees on appeal is denied.

The decision below is AFFIRMED in part, REVERSED in part, and REMAND-

ED to the district court for further proceedings consistent with this opinion.

---

**30.** The city and county officials are not shielded from punitive damages under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 & n. 32, 101 S.Ct. 2748, 2762 & n. 32, 69 L.Ed.2d 616 (1981).

**31.** Under Idaho law, Susan Hallstrom is entitled to name unknown parties in her pleadings and amend the complaint when the "true name[s]" of the parties are discovered. Idaho R.Civ.P. 10(a)(4); *see also* Idaho R.Civ.P. 15(c) (setting forth requirements for relation back of amend-

ments). On the record, we cannot determine whether any discovery has been taken or pursued with respect to the Doe defendants named in the complaint. We make no determination as to her capacity under state law to amend her pleadings to reflect the true names of these defendants.

**32.** We find Hallstrom's additional requests for declaratory and injunctive relief either moot or lacking in merit.