Claudell HATTER, Plaintiff

v.

**Daniel DYER, Defendant.**

**Case No. 2:14–cv–616–AG (GJS)**

United States District Court,
C.D. California.

Signed 12/31/2015

Claudell Hatter, Los Angeles, CA, pro se.

Timothy J. Kral, Manning and Kass Ellrod Ramirez Trester LLP, Los Angeles, CA, for Defendant.

## ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

ANDREW J. GUILFORD, UNITED STATES DISTRICT JUDGE

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint and all pleadings, motions, and other documents filed in this action, the Report and Recommendation of United States Magistrate Judge ("Report"), Plaintiff's Objections to the Report, and Defendant's Response. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R.Civ.P. 72(b), the Court has conducted a de novo review of those portions of the Report to which objections have been stated.

Nothing in the Objections affects or alters the analysis and conclusions set forth in the Report.

The Court accepts the findings and recommendations set forth in the Report. Accordingly, **IT IS ORDERED** that: Defendant's motion to dismiss is GRANTED; and the Complaint is dismissed with leave to amend by no later than forty-five days after the date of this Order, remedying the deficiencies discussed in the Report in a "First Amended Complaint." The First Amended Complaint must be complete and without reference to the prior complaint or any other already-filed document.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

GAIL J. STANDISH, UNITED STATES MAGISTRATE JUDGE

United States Magistrate Judge Gail J. Standish submits this Report and Recommendation under 28 U.S.C. § 636 and General Order No. 05–07 of the United States District Court for the Central District of California to the Honorable Andrew J. Guilford, United States District Judge.

### INTRODUCTION

On February 4, 2014, Hatter filed a 42 U.S.C. § 1983 civil rights complaint asserting that Dyer violated his Eighth Amendment rights by failing to remediate mold

and prevent gross jail overcrowding. [Dkt. 3.] On May 6, 2015, Dyer moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) because the Complaint fails to properly allege sufficient facts to satisfy the "subjective prong" of the Eighth Amendment deliberate indifference test. [Dkt. 27.][1] Hatter opposed, and Dyer replied. [Dkts. 32 & 33.] For the reasons that follow, the Court recommends that the District Judge GRANT the motion to dismiss and GRANT Hatter leave to amend.

## ALLEGATIONS OF THE COMPLAINT[2]

■ According to the Complaint, Hatter has been "forced to suffer damage to [his] physical health in Los Angeles County Men's Central Jail, where [he] had to breathe in the mold from the walls," which resulted in trips to the hospital for medical treatment. [Compl. at 5.] In addition, Hatter alleges that jail overcrowding of dormitory 9500 has caused him to experience "stress, tension, and communicable diseases." [*Id.*] Hatter says that he complained in writing to Los Angeles County Sheriff Captain Dyer, but that he received "no results from him as head of the jail." [*Id.*]

The Complaint asserts that Dyer has violated the Cruel and Unusual Punishment Clause of the Eighth Amendment,

1. For the purposes of the motion to dismiss, Dyer expressly waived any argument that the Complaint does not properly allege a sufficiently serious objective harm. [Dkt. 27 at 4–5.]

2. The Court notes that Hatter included additional allegations in his opposition to the motion to dismiss, which Hatter filed along with a verification. [*See* Dkt. 32 at 6.] The Court cannot consider these on a motion to dismiss as they are not also contained in the Complaint. *See Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir.2003) (citing *Lee v. City of Los*

and that Hatter should be paid $750,000 in compensation. [*Id.* at 5, 6.]

## GOVERNING STANDARDS

Rule 12(b)(6) requires dismissal when a complaint fails to state a cognizable legal theory or alleges insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir.2013). On such review, the Court accepts all facts alleged in a complaint as true and draws all reasonable inferences in favor of the plaintiff. *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 614 (9th Cir.2014). Because Hatter proceeds *pro se*, this Court must hold his complaint "to less stringent standards than formal pleadings drafted by lawyers" and "construe the pleadings liberally," "particularly" because this is a "civil rights case[.]" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.2010) (internal citations and quotations omitted).

## DISCUSSION

**I. Hatter Was Required to Sufficiently Allege Deliberate Indifference to Plead His Eighth Amendment Claim, And Failed to Do So.**

■ As a threshold matter, the parties dispute whether Hatter was required to plead deliberate indifference. Under the Complaint *as currently pled*, the an-

*Angeles*, 250 F.3d 668, 688–89 (9th Cir.2001) ("Generally, on a 12(b)(6) motion, the District Court should consider only the pleadings."). Hatter's contention that the Court must consider his verified opposition as "admissible evidence" would be true if Dyer had moved for summary judgment. Without ruling on the sufficiency of a complaint that includes the facts stated in Hatter's verified opposition, the Court notes that Hatter states under penalty of perjury facts that, if included in a future complaint, bear on the merits of his claim.

swer is clear. Hatter alleges a violation of the Eighth Amendment, specifically that Dyer failed to respond to Hatter's complaints about the mold on the walls of the County Jail and overcrowding conditions. [Compl. at 5.] It is well settled that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir.2014). This standard requires more than "gross negligence" or even "recklessness." *Farmer*, 511 U.S. at 836, 836 n. 4, 114 S.Ct. 1970.

■ Here, the *Complaint* fails to allege facts sufficient to show deliberate indifference. The only fact Hatter alleges in the Complaint related to Dyer's mindset is that Hatter "ha[d] written complaint forms to Los Angeles County Sheriff Captain Dyer about this problem [of overcrowding], with no results from him, as head of the jail." [Compl. at 5.] This does not rise to the level of deliberate indifference because it does not allege that Dyer actually believed that a substantial risk of harm existed to Hatter, nor does it demonstrate anything more than a failure of ordinary care.[3] *Redman v. County of San Diego*, 942 F.2d 1435, 1441 n. 8 (9th Cir.1991) (*en banc*), *abrogated on other grounds, Farmer*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (abrogation recognized in *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th

Cir.2014)) (" '[A]ccidents' and 'inadvertent failure' do not rise to the level of deliberate indifference."). Thus, allegations of mere inaction by Dyer are insufficient, without more, to demonstrate his wrongful mental state.

## II. When Repleading His Claim Under the Fourteenth Amendment, Hatter Must Allege Deliberate Indifference.

■ Hatter's opposition to the motion to dismiss raises a more difficult question about the standard governing his claim. In his opposition, Hatter explains that, "at the time of the alleged deprivation by Dyer, plaintiff had not been convicted yet"—*i.e.*, he was a pretrial detainee. [*See* Dkt. 32 at 5–6.] And, as Hatter correctly notes, a pretrial detainee is protected from conditions constituting punishment under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment Cruel and Unusual Punishment Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1971); *Redman*, 942 F.2d at 1440 n. 7 ("Thus, while the eighth amendment proscribes cruel and unusual punishment for convicted inmates, the due process clause of the fourteenth amendment proscribes any punishment of pretrial detainees."). Hatter argues that, accordingly, he need not demonstrate deliberate indifference. Dyer contends that, regardless of whether Hatter was a pretrial detainee (bringing his claim under the Fourteenth Amendment Due Process Clause) or a convicted prisoner (bringing a claim predicated on an Eighth Amendment violation), "the 'deliberate indifference' test is the same for pretrial detainees and for convicted pris-

---

**3.** Indeed, it is not entirely clear what information Hatter provided in his written complaints—*i.e.*, whether the complaints dealt with the alleged mold issues, the alleged over-

crowding, or both. Hatter appears to have attached at least one such complaint, but it is generally illegible due to poor photocopying.

oners." [Dkt. 33 at 4 (citing *Clouthier v. Cty. of Contra Costa,* 591 F.3d 1232, 1242–43 (9th Cir.2010).] If Hatter is correct, the Court could simply recommend constructive amendment of his Complaint to present a Fourteenth Amendment Due Process Clause claim instead of an Eighth Amendment Cruel and Unusual Punishment Clause claim.

Accordingly, this Court must determine the proper standard governing a Fourteenth Amendment "conditions of confinement" claim brought by a pretrial detainee.

### A. Survey of Relevant Supreme Court and Ninth Circuit Precedent

#### 1. Early Supreme Court Precedent

The Supreme Court first decided the standard for a pretrial detainee challenging conditions of confinement under the Fifth Amendment Due Process Clause in *Bell v. Wolfish* : "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, ... the proper inquiry is whether those conditions amount to punishment of the detainee." 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 536, 99 S.Ct. 1861. The Court further provided the following "useful guideposts in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment":

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 538–39, 99 S.Ct. 1861 (internal citations and quotation marks omitted). The *Bell* Court specifically differentiated the rights of a pretrial detainee from those of a convicted inmate: "Due process requires that a pretrial detainee not be punished," whereas a "sentenced inmate ... may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell,* 441 U.S. at 535 n. 16, 99 S.Ct. 1861.

Five years later, the Supreme Court reaffirmed its core holding in *Bell* : Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' right to be free from punishment. *See Block v. Rutherford,* 468 U.S. 576, 584, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). Put another way, a government actor may impermissibly punish a pretrial detainee either by (1) intending to punish or (2) imposing conditions or restrictions not reasonably related to legitimate prison goals.

Before turning to Ninth Circuit precedent, two Eighth Amendment cases are

worth noting, as under some views, they might relate to the definition of punishment: *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) and *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Wilson,* the Court declined to interpret the **Eighth Amendment** as permitting liability to be imposed on prison officials based solely on the presence of objectively inhumane prison conditions. 501 U.S. at 299–302, 111 S.Ct. 2321. It noted:

> The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment.* If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify.

*Wilson,* 501 U.S. at 300, 111 S.Ct. 2321 (emphasis in original).

In *Farmer,* the Court rejected an "invitation to adopt an objective test for deliberate indifference" and instead concluded "that a prison official cannot be found liable **under the Eighth Amendment** for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (emphasis added). In defending the subjective requirement, the Court noted that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* at 837, 114 S.Ct. 1970.

Accordingly, the Court said, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id,* at 838, 114 S.Ct. 1970.

### 2. Ninth Circuit Precedent

After *Bell,* the Ninth Circuit has splintered on the relationship between the Eighth Amendment and Fourteenth Amendment standards in "conditions of confinement" cases. For example, the Ninth Circuit described the Fourteenth Amendment as "the more protective" standard that "implicitly incorporates the cruel and unusual punishments standards *as a constitutional minimum,*" *Gary H. v. Hegstrom,* 831 F.2d 1430, 1432 (9th Cir. 1987) (emphasis added), and has noted that the Fourteenth Amendment "right against jail conditions or restrictions that 'amount to punishment'" is a "standard [that] **differs significantly** from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." *Pierce v. Cnty. of Orange,* 526 F.3d 1190, 1205 (9th Cir.2008) (emphasis added); *e.g., Demery v. Arpaio,* 378 F.3d 1020, 1028–29 (9th Cir.2004) (holding that streaming live images of pretrial detainees to internet was not reasonably related to a non-punitive purpose, and thus, violated the Fourteenth Amendment);[4] *Valdez v. Rosenbaum,* 302 F.3d 1039, 1045–46 (9th Cir. 2002) ("In distinguishing between a permissible restriction and impermissible punishment, we first examine whether the restriction is based upon an express intent to inflict punishment.... We next consider whether punitive intent can be inferred

---

4. In *Demery,* the Court rejected a claim that *Bell'*s test had been dislodged by a later Supreme Court case, reiterating that "the Fourteenth Amendment prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment on convicted prisoners." 378 F.3d at 1029.

from the nature of the restriction."); *Stone v. City & Cnty. of San Francisco,* 968 F.2d 850, 857, 857 n. 10 (9th Cir.1992), *as amended on denial of reh'g* (Aug. 25, 1992) (holding that *Wilson*—a then-recent case concluding "that plaintiffs must show prison officials showed 'deliberate indifference' to prison conditions to establish an Eighth Amendment violation"—did not apply to the *Stone* plaintiffs, in part, because they were "pretrial detainees who possess greater constitutional rights than prisoners").

Yet, in other cases, and in potential conflict with *Bell* footnote 16, Ninth Circuit decisions appear to treat the Fourteenth and Eighth Amendment as creating equivalent standards in "conditions of confinement" cases. *See, e.g., Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir.1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards."); *Anderson v. Cnty. of Kern,* 45 F.3d 1310, 1313 (9th Cir.1995) *opinion amended on denial of reh'g,* 75 F.3d 448 (9th Cir.1995) ("Similarly, the placement of pretrial detainees in safety cells is 'punishment' in violation of the Fourteenth Amendment only if prison officials act with deliberate indifference to the inmates' needs."). This line of cases appears to be founded on the Ninth Circuit's *en banc* opinion in *Redman,* which concluded that a "deliberate or reckless indifference" standard was appropriate in a Fourteenth Amendment "failure-to-protect" case. *Redman,* 942 F.2d at 1442.[5] *Redman* expressly left open the possibility that the deliberate indifference standard of the Eighth Amendment differed from that under the Fourteenth Amendment for pretrial detainees. *See id.* at 1443 ("we do not decide here whether the same inquiries [as those under the Eighth Amendment deliberate indifference test] are appropriate for claims brought by pretrial detainees under the Due Process Clause"); *see also id.* at 1440 n. 7 ("The due process clause provides a different standard for pretrial detainees than does the eighth amendment's proscription against "cruel and unusual punishment" for convicted prisoners ..."); *Anderson,* 45 F.3d at 1313 n. 1 (same).

Two years later, *Redman* was extended in a "conditions of confinement" case where the Ninth Circuit reiterated the deliberate indifference requirement and "remand[ed] to the district court for its determination on the merits, guided by standards at least as solicitous as those applied to pretrial detainees." *Hallstrom v. City of Garden City,* 991 F.2d 1473, 1485 (9th Cir.1993).

In *Clouthier v. Cty. of Contra Costa,* a Ninth Circuit panel held broadly that a pretrial detainee bringing a claim that a governmental actor "failed to prevent harm" was required to show deliberate indifference:

> In light of the Supreme Court's rulings that conditions of confinement violate pretrial detainees' Fourteenth Amendment rights if the conditions amount to punishment, *Bell,* 441 U.S. at 535, 99 S.Ct. 1861, and that failure to prevent harm amounts to punishment where detention officials are deliberately indifferent, *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970, we have concluded that the "deliberate indifference" standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees. *See, e.g., Lolli [v.*

---

5. *Farmer* abrogated *Redman* to the extent that it permitted "reckless indifference" to satisfy the Eighth Amendment's mental state requirement. *Farmer,* 511 U.S. at 836, 114 S.Ct. 1970.

*County of Orange]*, 351 F.3d [410,] at 418–19 [ (9th Cir.2003) ]; *Gibson [v. County of Washoe, Nev.]*, 290 F.3d [1175,] at 1188 n. 9 [ (9th Cir.2002) ]; *Cabrales [v. County of Los Angeles]*, 864 F.2d [1454] at 1461 & n. 2 [ (9th Cir. 1988) ]. Although we have noted that the Eighth Amendment may provide "a minimum standard of care" for determining the rights of pretrial detainees, *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir.2003), neither we nor the Supreme Court have departed from the standard set forth in *Bell* and *Farmer* for considering pretrial detainees' claims that government officials violated their Fourteenth Amendment rights by failing to prevent harm. *See, e.g., Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment ... we apply the same standards.").

In this case, Clouthier was a pretrial detainee confined at MDF in connection with battery and vandalism charges. ***Accordingly, under* Bell *and our cases, we must consider whether* Clouthier *was subjected to punishment. This requires us to inquire into the subjective component of punishment, that is, whether Foley, Steele, or Blush acted with deliberate indifference as defined in* Farmer *and our cases.***

591 F.3d 1232, 1242–43 (9th Cir.2010) (emphasis added). It is *Clouthier* that Dyer relies upon here to argue that Hatter must show deliberate indifference.

### 3. Recent Supreme Court and Ninth Circuit Precedent

Just recently, the Supreme Court further opined on the scope and interpretation of *Bell* in *Kingsley v. Hendrickson*, where it held that a pretrial detainee bringing an excessive force claim "must show only that the force purposely or knowingly used against him was objectively unreasonable" rather than prove "a subjective standard that takes into account a defendant's state of mind." —— U.S. ——, 135 S.Ct. 2466, 2472, 192 L.Ed.2d 416 (June 22, 2015). The Court gave several rationales. First, it explained that *Bell* did not require a finding of a wrongful state of mind for a pretrial detainee to suffer unconstitutional punishment:

> [I]n *Bell*, we explained that such 'punishment' can consist of actions taken with an 'expressed intent to punish.' 441 U.S. at 538, 99 S.Ct. 1861. But the *Bell* Court went on to explain that, in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose." *Id.*, at 561, 99 S.Ct. 1861. The *Bell* Court applied this latter objective standard to evaluate a variety of prison conditions, including a prison's practice of double-bunking. In doing so, it did not consider the prison officials' subjective beliefs about the policy. *Id.*, at 541–543, 99 S.Ct. 1861. Rather, the Court examined objective evidence, such as the size of the rooms and available amenities, before concluding that the conditions were reasonably related to the legitimate purpose of holding detainees for trial and did not appear excessive in relation to that purpose. *Ibid.*

*Bell*'s focus on "punishment" does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, as *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that

the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.

*Kingsley*, 135 S.Ct. at 2473–74. As supporting reasoning, the Court also identified the practicalities involved in providing a "workable" standard, and explained that "the use of an objective standard adequately protects an officer who acts in good faith." *Id.* at 2474.

Relevant here, one of the *Kingsley* dissents accused the majority of "misreading *Bell* as forbidding States to take *any* harmful action against pretrial detainees that is not 'reasonably related to a legitimate goal.'" *Id.* at 2478 (Scalia, J., dissenting).[6] Scalia's dissent drew a distinction between excessive force claims—the subject of the *Kingsley* case—and traditional "conditions of confinement" claims, noting that for the latter, the objective "reasonable relation" test made logical sense because "[t]he conditions in which pretrial detainees are held, and the security policies to which they are subject, are the result of considered deliberation by the authority imposing the detention." *Id.*[7]

Less than two months after *Kingsley* issued, a Ninth Circuit panel split about its effect on the standard for evaluating Fourteenth Amendment "failure-to-protect" claims brought by a pretrial detainee. *Castro v. Cnty. of Los Angeles*, 797 F.3d 654 (9th Cir.2015), *pet. for r'hrng and*

r'hrng en banc filed. Aug. 25, 2015.[8] Evaluating a claim of sufficiency of the evidence of deliberate indifference, the majority, citing *Clouthier*, 591 F.3d at 1242, explained that "the 'deliberate indifference' test is the same for pretrial detainees and for convicted prisoners" despite the differing constitutional origins. *Castro*, 797 F.3d at 664. The majority found *Kingsley* inapplicable for two reasons. First, it concluded that *Kingsley* did not change the standard for a standalone Fourteenth Amendment Due Process Clause claim, but only addressed the standard protecting pretrial detainees for a Fourteenth Amendment Due Process Clause claim that incorporates the Fourth Amendment. *Id.* at 664–65. Second, the panel concluded that "even if *Kingsley* did establish different standards for excessive-force claims brought by pretrial detainees as opposed to convicted prisoners, such a holding would have no bearing on the failure-to-protect claims presented here and in *Clouthier*" because "[t]he standard for a failure-to-protect claim—deliberate indifference to a substantial risk of serious harm—is completely different from the standard for an excessive-force claim." *Id.* at 665. The majority emphasized that failure-to-protect claims, unlike excessive force claims, required a subjective wrongful state of mind because they involve no affirmative acts. *Id.*

Judge Graber dissented in part, arguing that *Kingsley* "calls into question [Ninth

---

6. Justice Alito dissented that the petition had been improvidently granted because the Court has not yet resolved whether the Fourth Amendment provides pretrial detainees with an excessive force claim. *Kingsley*, 135 S.Ct. at 2479. If it does, he argues, there is no need to consider such a claim under the Fourteenth Amendment substantive due process framework. To the extent that the Court's opinion here refers to a *Kingsley* dissent, it means Justice Scalia's dissent.

7. Neither the majority nor the dissents in *Kingsley* even mentioned *Farmer*'s language quoted above about the definition of punishment.

8. On September 17, 2015, the *Castro* panel ordered the parties to file supplemental briefs on, among other things, "whether a Fourteenth Amendment deliberate indifference claim is governed by an objective or subjective knowledge standard." *Castro*, 797 F.3d 654, Dkt 58.

Circuit] precedent on the appropriate state-of-mind inquiry in failure-to-protect claims brought by pretrial detainees." *Id.* at 677; *see also id.* at 680.[9] More specifically, the dissent contended that "*Clouthier*'s *only* reason for applying the same test in the Eighth and Fourteenth Amendment contexts was that now-defunct reading of" prior Supreme Court precedent, and so "it is questionable whether *Clouthier* remains good law on this point." *Id.* at 680–81. That is, under the dissent's view, *Clouthier* read *Bell* "to require proof of punitive intent for failure-to-protect claims, where those claims arise in a pretrial or a post-conviction context." *Id.* at 680. And *Kingsley*, says the dissent, "rejected precisely that reading of *Bell*," instead holding that proof of such intent is not required. *Id.*

### B. Analysis

Having summarized the law, this Court's duty is now to apply it. The question is: *which* law must the Court apply? Under cases like *Redman* (as extended to "conditions of confinement" cases by *Hallstrom* ) and *Frost,* Hatter would bear a duty to allege deliberate indifference. Conversely, in cases like *Demery* and *Valdez,* the state-of-mind inquiry is satisfied by a showing of either an intent to punish **or** objective facts that proxy for an intent to punish— *i.e.,* facts that demonstrate the restriction is not related to a valid penological goal. In short, pre-*Kingsley* Ninth Circuit precedent appears inconsistent. Post-*Kingsley* Ninth Circuit precedent (*i.e., Castro* ) appears to favor continuing the *Redman-*analysis, but, as a failure-to-protect case, it does not squarely govern here. And, as of today, *Castro* 's footing is unsure: the panel has *sua sponte* ordered supplemental briefing after its 2–1 decision to reconsider the same issue presented here (in the failure-to-protect context).

### 1. Principles for Determining Applicable Binding Precedent

The complex interplay described above—a Gordian knot of conflicting lines of Ninth Circuit authority, an intervening Supreme Court case, and closely related post-intervening authority precedent—demands a brief review of Ninth Circuit principles about what authority binds this Court.

▪ *First,* perhaps the most fundamental and obvious rule of precedent: "A district court bound by circuit authority . . . has no choice but to follow it, even if convinced that such authority was wrongly decided." *Hart v. Massanari,* 266 F.3d 1155, 1175 (9th Cir.2001). Put bluntly, "caselaw on point *is* the law." *Id.* at 1170. So once the Court determines what (if any) precedent controls, it must apply it.

▪ *Second,* "[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." *Id.* at 1171 (*quoted in U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.,* 792 F.3d 1121, 1127 (9th Cir. 2015) (en banc)). That principle applies to later Ninth Circuit panels just as much as this Court. *Id.* ("[A] later three-judge panel considering a case that is controlled by the rule announced in an earlier panel's opinion has no choice but to apply the earlier-adopted rule[.]"); *see United States v. Jefferson,* 791 F.3d 1013, 1016 n. 2 (9th Cir.2015) (same). And the earlier panel's

---

9. The dissent was unwilling to hold that the conflict between *Kingsley* and Ninth Circuit precedent was "sufficient to meet the 'high bar' that would authorize our panel to depart from that precedent." *See Castro,* 797 F.3d at 679 n. 4; *see also infra* at 20 (discussing effect of dissent).

reasoning is binding even if the resolution of the particular issue was not necessary to the final outcome. *United States v. Johnson,* 256 F.3d 895, 914 (9th Cir.2001) (en banc) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.").

 But there's an exception to this first-in-time rule: "[A] district court ... is free to reexamine the holding of a prior [Ninth Circuit decision] in light of an inconsistent decision by" the Supreme Court "on a closely related, but not identical issue" where the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie,* 335 F.3d 889, 899, 900 (9th Cir.2003) (en banc) (*quoted in In re Deitz,* 760 F.3d 1038 (9th Cir.2014)); *see also Lair v. Bullock,* 697 F.3d 1200, 1206 (9th Cir.2012) (confirming that standard applies to district courts as well). "It is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to 'cast doubt' on the prior circuit precedent." *Lair,* 697 F.3d at 1207 (internal citation omitted). The district court remains bound by "prior [Ninth Circuit] precedent if it can be reasonably harmonized with the intervening authority." *In re Flores,* 692 F.3d 1021, 1030 (9th Cir.2012), *overruled on other grounds,* 735 F.3d 855 (9th Cir.2013).

 *Third,* this Court must follow the "black letter rule" *and* the mode of analysis of binding precedent. *See Sanchez v. Mukasey,* 521 F.3d 1106, 1110 (9th Cir. 2008) *on reh'g en banc sub nom. Sanchez v. Holder,* 560 F.3d 1028 (9th Cir.2009) ("we treat reasoning central to a panel's

decision as binding later panels"); *Miller,* 335 F.3d at 900; *see also Hart,* 266 F.3d at 1170 ("In determining whether it is bound by an earlier decision, a court considers not merely the reason and spirit of cases but also the letter of particular precedents. This includes not only the rule announced, but also the facts giving rise to the dispute, other rules considered and rejected and the views expressed in response to any dissent or concurrence." (internal citations and quotation marks omitted)).

Finally, the *fourth* principle is actually an absence of guidance: this Court has not located any Ninth Circuit authority that instructs district courts facing conflicting lines of its precedent on how to proceed in their analysis (other than applying the first-in-time rule above). *Accord Hill v. Biter,* No. 2:12–CV–2098 MCE DAD, 2013 WL 4433542, at *1 n. 1 (E.D.Cal. Aug. 16, 2013) *report and recommendation adopted,* No. 2:12–CV–2098 MCE DAD, 2013 WL 5295684 (E.D.Cal. Sept. 18, 2013).

### 2. *Hallstrom* is the Binding Pre-*Kingsley* Ninth Circuit Precedent.

The Court begins at *Redman,* because, as an *en banc* Ninth Circuit decision, it overrules all prior inconsistent cases and is binding absent overruling *en banc. Redman* held in 1991 that Fourteenth Amendment "failure-to-protect" claims by pretrial detainees were subject to a "deliberate indifference" standard, although it did not hold the standard was equivalent to the Eighth Amendment "deliberate indifference" standard. 942 F.2d at 1442. *Redman* was extended to "conditions of confinement" cases two years later in *Hallstrom*:

In *Redman v. County of San Diego,* 942 F.2d 1435 (9th Cir.1991) (en banc), we determined that in the context of

providing for personal security, "[t]he requirement of conduct that amounts to 'deliberate indifference' provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons." *Id.* at 1443. We noted that this standard would "protect against the deliberate, but arbitrary, choices by government." *Id.* We remand to the district court for its determination on the merits, guided by standards at least as solicitous as those applied to pretrial detainees.

991 F.2d at 1485. Thus, *Hallstrom* establishes, at the Ninth Circuit panel level, two propositions: (1) for purposes of determining the appropriate mental state requirement under the Fourteenth Amendment, "failure-to-protect" claims are analogous to "conditions of confinement" claims; and (2) some type of "deliberate indifference" standard governs both types of claims. To the extent Ninth Circuit panel precedent post-dating *Hallstrom* holds otherwise, it must accede based on the first-in-time rule. This Court has uncovered no Ninth Circuit *en banc* precedent overruling or otherwise modifying *Hallstrom.*

Thus, *Hallstrom* was (and remains) the governing law in the Ninth Circuit for Fourteenth Amendment pretrial detainee "conditions of confinement" claims, absent more recent Supreme Court precedent that is "clearly irreconciliable" with *Hallstrom.*

3. *Kingsley* **is in Significant Tension with** *Hallstrom, Redman,* **and Other Ninth Circuit Precedent Requiring a Pretrial Detainee to Demonstrate Deliberate Indifference.**

Although *Kingsley* dealt with whether a pretrial detainee asserting an excessive force claim under the Fourteenth Amendment needed to demonstrate deliberate indifference, its logic applies equally, if not with greater force, in the context of a "conditions of confinement" case. *First,* the Court's statements about *Bell* are not limited to excessive force claims; rather, in explaining that *Bell* allows "a pretrial detainee [to] nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose,'" the *Kingsley* decision expressly noted that *Bell* "applied this latter objective standard to evaluate a variety of prison conditions" without "consider[ing] the prison officials' subjective beliefs about the policy." *Kingsley,* 135 S.Ct. at 2473. Thus, the *Kingsley* majority read *Bell* as already establishing the principle that a pretrial detainee need not prove actual intent. Indeed, it says as much in the next paragraph, without limitation to excessive force claims: "[A]s *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 2474.

Scalia's *Kingsley* dissent reads *Bell* similarly, seeking to confine the objective standard to *only* conditions of confinement cases; it states, "*Bell* endorsed this 'reasonable relation' inference in the context of a challenge *to conditions of a confinement.*" *Id.* at 2478 (Scalia, J., dissenting) (emphasis in original). The dissent reasons this makes good sense because "[t]he conditions in which pretrial detainees are held, and the security policies to which they are subject, are the result of considered deliberation by the authority imposing the detention." *Id.* By contrast, according to the dissent, a government actor often uses force in the heat of a moment, without deliberation, and in response to a

need to maintain order. In other words, prison officials should be held to a higher standard for confinement of pretrial detainees (who, it bears repeating, cannot be punished at all) because they control the conditions in which these detainees are held. Thus, the failure to provide adequate conditions, with no penological purpose, cannot be anything other than punishment. Taking the *Kingsley* majority and Scalia dissent together, eight justices endorsed a view of *Bell* requiring a pretrial detainee to prove only the "reasonable relation" inference. And the *Castro* dissent read *Kingsley* just as this Court does—to undermine *Clouthier*'s—and in this Court's view, *Redman's*, *Hallstrom's* and *Frost*'s—single rationale for applying the *Farmer* test equally to Eighth and Fourteenth Amendment claims. *Castro*, 797 F.3d at 680 (Graber, J., dissenting).

Such a reading holds prison officials to the higher standard when confining pretrial detainees that the Supreme Court set forth as early as *Bell*, and again as recently in *Kingsley*. *Kingsley*, 135 S.Ct. at 2475 ("[M]ost importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically." (internal quotation marks omitted)); *Bell*, 441 U.S. at 535 n. 16, 99 S.Ct. 1861 ("Due process requires that a pretrial detainee not be punished," whereas a "sentenced inmate ... may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment."); *see also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir.2008) (same). There is no meaningful distinction between "punishment" and "cruel and unusual punishment" without imposing a test for the former that prohibits punishment that is neither cruel nor unusual.

Finally, adopting the *Bell–Kingsley* test does not render the government official's intent irrelevant in a Section 1983 lawsuit.

A pretrial detainee still must show either actual intent or that "the action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 135 S.Ct. at 2474. Whether a legitimate governmental objective exists incorporates at least some consideration of the official's mindset at the time he or she acted. Moreover, for those actors covered by qualified immunity, a plaintiff must still show that the official did not believe in good faith that his or her conduct was rationally related and proportionally measured to achieve a valid governmental objective in order to prevail. *See id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Accordingly, this Court concludes *Kingsley* is in significant tension with *Hallstrom*.

**4. Despite the Significant Tension Between *Kingsley* and *Hallstrom*, *Castro* Binds this Court to Follow *Hallstrom*.**

Although *Kingsley* is in significant tension with *Redman* and *Hallstrom*, this Court cannot conclude that the two precedents cannot be applied simultaneously. *Castro* demands such a conclusion: the majority found that "failure to protect" claims were distinguishable from Fourteenth Amendment excessive force claims, and Judge Graber's dissent explained that she did not feel that *Kingsley* spoke so strongly as to command overruling of *Redman*. On this issue (whether *Kingsley* and *Redman* can be "reasonably harmonized"), *Castro* is binding precedent on this Court unless *Castro* itself can be distinguished from this case. In other words, is there anything about a "conditions of confinement" case that renders *Kingsley* "clearly irreconcilable" with *Hallstrom* in a way that it was not "clearly irreconciliable" with *Clouthier*?

One might argue that unlike "failure to protect claims"—which always relate to a government actor's omissions—"conditions of confinement" claims might be more properly characterized as affirmative governmental acts. *See, e.g., Kingsley,* 135 S.Ct. at 2478. If a prison guard does not feed a prisoner for three days, is that an affirmative act (*e.g.,* the officer starved the prisoner, inflicting punishment) or an omission (*e.g.,* the failure to provide food)? Similarly, is harm caused by festering mold an omission (*e.g.,* failure to abate the mold) or the product of affirmative acts (*e.g.,* housing a pretrial detainee in a moldy cell)? The difference in characterizing the nature of the harm is arguably significant. A significant premise underlying the *Clouthier* and *Castro* decisions is that government officials are entitled to the "deliberate indifference" standard in a failure-to-protect case because their liability, if any, arises from the absence of an affirmative act. *Castro,* 797 F.3d at 565.

Even taking into account this distinction between failure-to-protect claims and "conditions of confinement" claims, this Court discerns no meaningful difference for the purposes of the binding nature of *Castro*'s holding that *Kingsley* does not create irreconcilable differences with *Redman.* Accordingly, Hatter must show deliberate indifference to prove his Fourteenth Amendment claim.[10]

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that the District Judge issue an Order:

(1) ACCEPTING this Report and Recommendation;

(2) DISMISSING the Complaint with leave to amend;

(3) GRANTING leave to file an amended complaint by no later than forty-five days after the date of the District Judge's Order, remedying the deficiencies discussed above, titled "First Amended Complaint," and that is complete in and of itself without reference to the prior complaint or any other already-filed document.

**IT IS HEREBY RECOMMENDED.**

DATED: November 20, 2015

**10.** The Court notes that its recommendation would be different had *Castro,* which remains pending, been resolved differently. If the status of *Castro* changes such that this Court could conclude that *Kingsley* is in irreconcilable conflict with *Redman,* the Court would do so and conclude that a pretrial detainee need not show deliberate indifference on a Fourth Amendment "conditions of confinement" claim.